## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 20-23481-Civ-WILLIAMS/TORRES

TIM MINN, INC. *et al*.,

     Plaintiffs,

v.

TIM HORTONS USA INC.,

     Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION TO DISMISS

This matter is before the Court on Tim Hortons USA Inc.'s ("Defendant") motion to dismiss Tim Minn, Inc.'s ("Tim Minn") *et al*. (collectively, "Plaintiffs") third amended complaint ("TAC"). [D.E. 85]. Plaintiffs responded to Defendant's motion on December 24, 2020 [D.E. 95] to which Defendant replied on January 8, 2021. [D.E. 99]. Therefore, Defendant's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Defendant's motion to dismiss should be **GRANTED in part** and **DENIED in part**.[1]

---

[1]     On July 15, 2021, the Honorable Kathleen Williams referred Defendant's motion to dismiss to the undersigned Magistrate Judge for disposition. [D.E. 101].

# I.  BACKGROUND

Defendant is the franchisor of the Tim Hortons brand in the United States with restaurants involved in the sale of selected foods and beverages.  On February 26, 2016, Tim-Minn and Defendant executed an area representative and development agreement (the "ARDA") where the former agreed to operate roughly 280 restaurants in Minnesota.  After opening 14 restaurants between November 2016 and November 2018, Tim-Minn could not comply with the development schedule.

Approximately two years later, the parties began negotiations to amend the ARDA.  Tim-Minn sought a reduction in development obligations and, after months of negotiations, the parties reached an agreement.  The amendment contained a general release of all claims against Defendant and, in exchange, Tim-Minn received a 32% reduction in development obligations, royalty concessions, and marketing support.

A year after the parties signed the amendment, Tim-Minn filed a complaint on February 20, 2019 against Defendant and Restaurant Brands International, LP ("RBI") in the United States District Court for Minnesota (the "Minnesota District Court").  The Minnesota District Court dismissed Tim-Minn's initial complaint for lack of subject matter jurisdiction.  Tim-Minn later filed a second amended complaint ("SAC") on August 29, 2019, asserting several causes of action premised on the Minnesota Franchise Act ("MFA"), the implied covenant of good faith and fair dealing, fraud and negligent misrepresentation, unjust enrichment, and breach of

contract.  The only purported difference between that pleading and the TAC is that the latter contains an additional unjust enrichment and breach of contract claim.

Defendant filed a motion to dismiss, and the Minnesota District Court granted that motion with prejudice with respect to Tim-Minn's MFA claims.  The dismissal of the MFA claims permitted the Minnesota District Court to honor the parties' forum selection clause, resulting in the transfer of this action to the Southern District of Florida.  Following transfer, Defendant filed another motion to dismiss.  However, Plaintiffs filed a motion for leave to file a TAC and the Court granted that request on October 20, 2020.  [D.E. 74].  Defendant subsequently filed an amended motion to dismiss that is matter is now ripe for disposition.

## II.  APPLICABLE PRINCIPLES AND LAW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss.  *Id*.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"

3

*Twombly*, 550 U.S. at 555 (citation omitted).  Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).  Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations.  *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2 (2012).  The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

### III.   ANALYSIS

Defendant seeks to dismiss the TAC because Plaintiffs' claims are barred under *res judicata* and collateral estoppel.  Defendant says that the Minnesota District Court's dismissal with prejudice is dispositive, and that Plaintiffs cannot present the same claims – even with the addition of their franchisees – to circumvent the language of the prior court order.  Alternatively, Defendant claims that the underlying general release is an absolute bar to all claims presented and

that the TAC fails for this additional reason.  Defendant's final argument is that, if all else fails, the TAC fails to state a claim because the allegations for each cause of action are conclusory or otherwise fail to plead the required elements.  To inform the analysis that follows, we first consider the relevant provisions of the underlying contractual agreements and principles of Florida contract law.

### A.   *The Relevant Contractual Provisions*

Defendant's motion to dismiss relies on several key provisions in support of the relief requested.  The first is a general release that applies to Tim-Minn and its affiliated franchisees:

> **GENERAL RELEASE**. For and in consideration of THUSA entering into this Agreement, and other good and valuable consideration received from or on behalf of THUSA, the receipt of which is hereby acknowledged, Developer [i.e., Plaintiff], *for itself and on behalf of itself for each Affiliate*, hereby remises, releases, acquits, satisfies, and forever discharges THUSA, its officers, directors, agents, employees, affiliates, subsidiaries, parent corporation, and all of their assignees (individually and together "THUSA"), of and from all manner of claims, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, and executions whatsoever, in law or in equity, which [Tim-Minn] or any Affiliate ever had, now has, or which any successor or assign of [Tim-Minn] or any Affiliate hereafter can, shall, or may have, whether known or unknown, against THUSA for, upon, or by reason of any matter, cause, or thing whatsoever, from the beginning of the world to the date of this Agreement.

[D.E. 81 at Ex. A, § 11 (emphasis added)].

The second provision is Section 1.4 of the ARDA where it includes a definition for the term "affiliate":

> 1.4.  Affiliate" means a Person that directly or indirectly Controls, is Controlled by, or is under common Control with another Person.  For clarity, Developer Subsidiaries are Affiliates of Developer.

[D.E. 39 at Ex. AG, § 1.4].  The third is a disclaimer in the ARDA where it states that Defendant makes no representations to Tim-Minn on revenue, profit, or the potential success of the business:

> To induce THUSA to sign this Agreement and grant Developer the franchise, Developer acknowledges that: . . . (e) Developer has not received or relied upon, and THUSA expressly disclaims making any representation, warranty or guaranty, express or implied, as to the revenues, profits or success of the TH Development Business.

*Id*. at § 17(e).[2]

## B.  *Principles of Florida Contract Law*

In addition to the relevant contractual agreements, disposition of the pending motion to dismiss requires consideration of Florida contract law.   Contract interpretation is "a question of law" and decided "by reading the words of a contract in the context of the entire contract and construing the contract to effectuate the parties' intent." *Feaz v. Wells Fargo Bank, N.A.,* 745 F.2d 1098, 1104 (11th Cir. 2014).  "Under Florida law, if the terms of [a contract] are clear and unambiguous, a court must interpret the contract in accordance with its plain meaning." *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996).  "Although contract interpretation is generally a question of law for the Court, if the contract contains ambiguities, a question of fact for the jury may be presented." *Assa Compania De Seguros, S.A. v. Codotrans, Inc.*, 2014 WL 11906600, at *3 (S.D. Fla. Sept. 12, 2014).

---

[2]    Section 16.7 of the ARDA further states that "this Agreement and all claims arising from the relationship between the parties will be governed by the laws of the State of Florida[.]"   [DE 39 at Ex. AG, § 16.7].

"The initial determination of whether the contract term is ambiguous is a question of law for the court.  Where the terms of the written instrument are disputed and reasonably susceptible to more than one construction, an issue of fact is presented as to the [contracting] parties' intent which cannot properly be resolved by summary judgment." *Strama v. Union Fid. Life Ins. Co.*, 793 So. 2d 1129, 1131 (Fla. 1st DCA 2001) (quoting *Universal Underwriters Ins. Co. v. Steve Hull Chevrolet, Inc.,* 513 So. 2d 218, 219 (Fla. 1st DCA 1987)); *BKD Twenty-One Mgmt. Co., Inc. v. Delsordo*, 127 So. 3d 527, 530 (Fla. 4th DCA 2012) ("[C]ontractual language is ambiguous only if it is susceptible to more than one *reasonable* interpretation.") (citing *Penzer v. Transportation Ins. Co.,* 29 So. 3d 1000, 1005 (Fla. 2010)); *Laufer v. Norma Fashions, Inc.*, 418 So. 2d 437, 439 (Fla. 3d DCA 1982) ("A phrase in a contract is ambiguous when it is uncertain of meaning and disputed.").

### C.   *Res Judicata and Collateral Estoppel*

Having set forth the relevant contractual agreements and Florida contract law, Defendant's primary argument is that the TAC should be dismissed because of *res judicata* and collateral estoppel.  Collateral estoppel and *res judicata* are judicial doctrines that prevent the same parties from relitigating the issues that have already decided in a prior action.  *See Topps v. State,* 865 So. 2d 1253, 1254–55 (Fla. 2004).  "The doctrine of res judicata (or claim preclusion) prohibits successive litigation of the very same claim by the same parties." *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2305 (2016) (citation and internal quotation marks

omitted).  This prohibition bars "the parties or their privies from relitigating issues that were or could have been raised" in a prior action that resulted in a final judgment on the merits.  *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *see also Maldonado v. U.S. Atty. Gen.*, 664 F.3d 1369, 1375 (11th Cir. 2011).

To invoke *res judicata*, the movant must establish four elements: "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999); *see also Kaiser Aerospace & Elecs. Corp. v. Teledyne Indus., Inc. (In re Piper Aircraft Corp.*), 244 F.3d 1289, 1296 (11th Cir. 2001).  If a party satisfies all four elements, the court questions whether the claim in the new suit was or could have been raised in the prior action; if yes, *res judicata* applies.  *See In re Piper Aircraft Corp.*, 244 F.3d at 1296.

Defendant says that the first two elements of *res judicata* apply because the prior dismissal with prejudice constitutes a final judgment on the merits and the Minnesota District Court is a court of competent jurisdiction.  Defendant also contends that the third element is satisfied because, although the parties are not necessarily identical, they are in privity with each other and meet one of the six exceptions to nonparty preclusion:

> The rule against nonparty preclusion . . . is subject to six categories of exceptions.  A court may apply nonparty preclusion if: (1) the nonparty agreed to be bound by the litigation of others; (2) a substantive legal relationship existed between the person to be bound and a party to the judgment; (3) the nonparty was adequately represented by someone who was a party to the suit; (4) the nonparty assumed control over the

litigation in which the judgment was issued; (5) a party attempted to relitigate issues through a proxy; or (6) a statutory scheme foreclosed successive litigation by nonlitigants.

*Griswold v. Cty. of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010) (internal citations omitted).

Defendant relies, for additional support, on the allegations in the TAC where Tim-Minn alleges that each franchisee is "wholly owned [by] Tim-Minn and RDP." [D.E. 81 at ¶¶ 11-24].  Defendant also points to an allegation where Tim Minn admits that "The Franchisee Plaintiffs . . . operated under Tim-Minn's umbrella," *id*. at 135, as additional evidence that the affiliates were "adequately represented by someone who was a party to the suit," and that "a substantive legal relationship existed between the person to be bound and a party to the judgment[.]".  *Griswold*, 598 F.3d at 1292.  So, given that this case involves the same causes of action as the prior action, Defendant concludes that *res judicata* applies and that the Court should dismiss with prejudice the TAC.

While *res judicata* acts as a bar to the relitigation of claims, "collateral estoppel precludes the relitigation of an issue that has already been litigated and resolved in a prior proceeding." *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998).  To invoke collateral estoppel, a party must establish the following four essential elements:

(1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have

had a full and fair opportunity to litigate the issue in the earlier proceeding.

*I.A. Durbin, Inc. v. Jefferson Nat. Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986). Like *res judicata*, collateral estoppel examines the identity and privity of the parties to determine whether it applies. *See E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1285 (11th Cir. 2004) ("If identity or privity of parties cannot be established, then there is no need to examine the other factors in determining whether res judicata or collateral estoppel applies.").

Although the Minnesota District Court declined to address every argument presented prior to transfer, Defendant says that collateral estoppel applies because the court decided the issue of whether the general release was valid and enforceable. Defendant views that as dispositive to all remaining claims because they are each dependent on the applicability of the general release. That is, if the general release applies, Defendant reasons that the entire TAC must be dismissed.

Plaintiffs oppose Defendant's motion because none of their claims are barred under *res judicata* or collateral estoppel. Plaintiffs say that, when the Minnesota District Court dismissed their prior complaint, it limited that ruling only to claims arising under the MFA. Indeed, Plaintiffs point to one sentence of that decision where the court explicitly declined to opine on counts four through ten of the SAC. [D.E. 59 at 16 ("As to Counts IV through X of Tim-Minn's Second Amended Complaint, the Court expresses no opinion on THUSA's motion to dismiss.")]. And since the TAC contains brand new causes of action – such as claims arising under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") – Plaintiffs

suggest that the motion to dismiss makes broad pronouncements that are inconsistent with the procedural history of this case.

Plaintiffs also add that *res judicata* does not apply because – while they concede (1) that the United States District Court for the District of Minnesota is a court of competent jurisdiction, (2) that a prior court order dismissed counts one through three with prejudice, and (3) that all of the claims in the TAC derive from a common nucleus of operative fact – Defendant cannot establish that the franchisee plaintiffs are in privity. Plaintiffs say that none of the six categories identified in *Griswold* apply because, based on the face of the pleading, each franchisee seeks to vindicate its own legal interests. That is, even if Tim-Minn and the franchisees are closely aligned, Plaintiffs ask that the Court allow this case to proceed to discovery so that a complete factual record can be established to determine conclusively whether the elements of *res judicata* apply.

Like *res judicata*, Plaintiffs say that collateral estoppel does not apply because it requires the same parties or privity.[3] *See E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1285 (11th Cir. 2004) ("[I]n this Circuit, collateral estoppel can apply *only* 'when the parties are the same (or in privity) [and] if the party against whom the issue was decided had a full and fair opportunity to litigate the issue in the earlier proceeding.'") (quoting *In re Southeast Banking Corp.,* 69 F.3d 1539, 1552 (11th Cir. 1995)). Yet, for the reasons already identified, Plaintiffs argue that

---

[3]     Plaintiffs rely on Florida law principles in applying *res judicata* and collateral estoppel. But, where this Court must determine the preclusive effect of a prior *federal* judgment, federal law applies. *See Hart v. Yamaha–Parts Distrib., Inc.,* 787 F.2d 1468, 1470 (11th Cir. 1986).

Tim-Minn and the franchisee plaintiffs are completely different entities.  And even if privity exists, Plaintiffs add that the Minnesota District Court declined to consider several counts presented in the SAC.  Plaintiffs further suggest that it is disingenuous for Defendant to state that the Minnesota District Court reached a final determination on all the causes of action presented in the SAC when that is plainly incorrect.  Either way, Plaintiffs conclude that neither *res judicata* nor collateral estoppel apply and that the motion to dismiss should be denied.

Defendant's reply is that the motion to dismiss should be granted because there are several instances where courts have found that privity exists between parents and subsidiaries.  Perhaps that is true, but the real problem is that Defendant relies almost exclusively on cases that were decided on a *motion for summary judgment* – not a motion to dismiss. *See, e.g.*, *Drier v. Tarpon Oil Co.*, 522 F.2d 199, 200 (5th Cir. 1975) (affirming summary judgment because "it is clear that Evans was in privity with Tarpon because he was the president and major stockholder of the corporation and he admitted by deposition that he made the 'ultimate decisions.'"); *Bray v. Bank of Am. Corp.*, 2018 WL 4567194, at *3 (M.D. Fla. Aug. 20, 2018) (granting defendant's motion for summary judgment because "Bray's claims are barred by *res judicata*."); *Shapiro v. United States*, 951 F. Supp. 1019, 1024 (S.D. Fla. 1996) (finding on summary judgment that taxpayers who were not named as parties qualified as parties for *res judicata* purposes).

That is *not* a coincidence because "[r]es judicata and collateral estoppel are affirmative defenses that typically should be raised pursuant to Federal Rule of

Civil Procedure 8(c) rather than in a motion to dismiss under Rule 12(b)(6)." *United States Golf Learning Inst., LLC v. Club Managers Ass'n of Am.*, 2012 WL 768201, at *3 (M.D. Fla. Mar. 9, 2012) (citing *Cope v. Bankamerica Hous. Serv., Inc.,* 2000 WL 1639590, at *4 (M.D. Ala. Oct. 10, 2000)); *see also Concordia v. Bendekovic,* 693 F.2d 1073, 1075 (11th Cir. 1982). The exception to this rule is where "the elements are apparent on the face of the pleadings and public documents of which the court may take judicial notice." *United States Golf Learning Inst., LLC*, 2012 WL 768201, at *3 (citing *Cope,* 2000 WL 1639590, at *4); *see also Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984) ("Generally, the existence of an affirmative defense will not support a motion to dismiss. Nevertheless, a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint.").

Defendant suggests that this case meets the exception because the TAC alleges that Tim-Minn and Restaurant Development Partners, Corp. ("RDP") own each of the franchisee plaintiffs.[4] [D.E. 81 at ¶¶ 11-24]. Defendant also relies on the allegation that Plaintiffs opened restaurants "through the individual Franchisee Plaintiffs," and that the Franchisee Plaintiffs "operated under Tim-Minn's umbrella." *Id*. at ¶¶ 35, 89, 135. Defendant further adds that the TAC concedes that Tim-Minn's principal, Paul Durigon ("Mr. Durigon"), acts on behalf of the franchisee plaintiffs. *Id*. at ¶ 144. When combined with the fact that the lawyers

---

[4]     Tim-Minn is incorporated under the laws of Minnesota whereas RDP is based in Ontario, Canada.

representing Tim-Minn in the Minnesota District Court are the same for the franchisee plaintiffs in this action, Defendant concludes that there is a substantive legal relationship between the two and that Tim-Minn adequately represented all interested parties prior to transfer.

Defendant's argument is unpersuasive for our purposes because, while there are some details on the relationship between Tim-Minn and the franchisee plaintiffs in the TAC, there are at best only fleeting references. That is, while the TAC alleges that Tim-Minn and RDP own the franchisee plaintiffs, it is uncertain how and to what extent that relationship exists. It is also unclear *when* Tim-Minn acquired the franchisee plaintiffs, the substance and timing of that ownership, and whether it had any effect on the corporate form of any entity. These unanswered questions are why courts prefer to determine privity on a motion summary judgment – rather than on a motion to dismiss – because the former has the benefit of a complete factual record whereas the latter must include enough factual details that make it plainly clear that privity is lacking. Motions to dismiss, based on a lack of privity, are therefore often deemed premature given the fact-intensive exercise required. *See CSX Transportation, Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1340 (11th Cir. 2017) ("We decline to decide this dispute. Whether parties were in privity is a factual question that should be decided in the first instance by the district court.") (citing cases); *Hart v. Yamaha-Parts Distributors, Inc.*, 787 F.2d 1468, 1472 (11th Cir. 1986) ("A district court's determination as to whether interrelated corporations are in privity with each other is a factual question").

Defendant's motion insists that privity is a concept that can be decided on a motion to dismiss.  But, privity "describes a relationship between one who is a party of record and a nonparty that is sufficiently close so a judgment for or against the party should bind or protect the nonparty."  *Hart v. Yamaha-Parts Distributors, Inc.*, 787 F.2d 1468, 1472 (11th Cir. 1986) (citing *Southwest Airlines Co. v. Texas International Airlines,* 546 F.2d 84, 95 (5th Cir. 1977)); *see also* 1B J. Moore, J. Lucas & T. Currier, Moore's Federal Practice § 0.411[1] at 392 (2d ed. 1984) (hereinafter "Moore's Federal Practice").  "This relationship between the party and nonparty may be one of several types: where the nonparty has succeeded to the party's interest in property, where the nonparty controlled the original suit, where the nonparty's interests were represented adequately by the party in the original suit, *Southwest Airlines,* 546 F.2d at 95, and where the party and nonparty have concurrent interests in the same property right."  *Hart*, 787 F.2d at 1472 (citing 1B Moore's Federal Practice § 0.411[1] at 392).  This is hardly the factual analysis that motions to dismiss are designed to do.

Yet Defendant conclusorily claims that privity exists because the franchisee plaintiffs are subsidiaries, and the analysis can end there.  But, there are no factual allegations in the TAC with respect to the corporate structure of any of these subsidiaries, the percent of ownership between Tim-Minn and RDP, the right or ability to control the franchisee plaintiffs, or whether any of these entities operate independently.  Without these details and a complete factual record, it is impossible

to determine whether the franchisee plaintiffs and Tim-Minn are in privity.[5]   The
Eleventh Circuit reached the same conclusion in *Hart* where the district court –
unlike us – had the benefit of a summary judgment record and concluded that
privity was sufficiently established for preclusion purposes.   But the Eleventh
Circuit rejected that conclusion because, without sufficient factual details on
ownership, the right to control subsidiaries, or whether the entities operate
independently, privity cannot be established:

> The record contains only the defendants' contradictory, generalized
> representations regarding the relationship between YMC/USA and
> Yamaha Parts.   In particular, there are no facts as to the percent of
> ownership, YMC/USA's right or ability to control Yamaha Parts, or
> whether these entities operated independently or as one unit.   Due to
> the lack of any factual basis for its determination, we find the district
> court was clearly erroneous in concluding Yamaha Parts was in privity
> with YMC/USA.   Therefore, we remand for further factfinding to
> determine whether the relationship between YMC/USA and Yamaha
> Parts is sufficiently close to justify preclusion.

*Hart*, 787 F.2d at 1473.

Under that analysis, it is highly doubtful that the Eleventh Circuit would
take a more charitable view of a similar conclusion on a motion to dismiss that
lacked any record whatsoever.   That counsels against granting this motion.   But
Defendant is undeterred on the theory that privity exists because the lawyers

---

[5]      Plaintiffs allege that the Tim-Minn and RDP wholly own the franchisee
plaintiffs but, without more specificity, we cannot discern what that means.   It is
unclear, for example, whether Tim-Minn's or RDP's interests of the franchisee
plaintiffs are of equal value or whether their interests together equal 100 percent of
the subsidiaries.   It is also unclear whether these franchisee plaintiffs operate
independently or if Tim-Minn and RDP exercise total control.   All of these questions
and more must be answered during discovery before collateral estoppel or *res
judicata* can be firmly established.

representing the franchisee plaintiffs in this case are the same that appeared in the Minnesota District Court on behalf of Tim-Minn.  This is even less compelling, however, because it fails to reference a single case where the hiring of the same lawyers is a factor that courts consider when determining the privity of corporations.  And even if such a case exists, it remains unclear how the hiring of the same lawyers cures all the other shortfalls previously identified.  The same is true with respect to Defendant's reliance on the allegation that the franchisee plaintiffs "operated under Tim-Minn's umbrella," because this provides no answer to the questions highlighted above.  [D.E. 81 at ¶ 135].  Defendant's reference to Mr. Durigon is equally unavailing because, while he acted on behalf of the franchisee plaintiffs, the complaint fails to provide any details of that relationship:

> However, and in violation of this express provision, *Durigon, on behalf of the Franchisee Plaintiffs*, discovered that THUSA was improperly billing the Brooklyn Park store at 3% of gross sales as royalty payment prior to December 31, 2018 when it should have billed 0.1% of gross sales.

[D.E. 81 at ¶ 144 (emphasis added)].

There is no need to go any further on the question of whether collateral estoppel or *res judicata* applies because, without privity or identical parties, neither doctrine – at least for now – is sufficient to dismiss the TAC.  *See E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1285 (11th Cir. 2004) ("If identity or privity of parties cannot be established, then there is no need to examine the other factors in determining whether res judicata or collateral estoppel applies.").  Because there is

an insufficient factual record to apply collateral estoppel or *res judicata* to the TAC,

Defendant's motion to dismiss the TAC on these grounds should be **DENIED**.

### D.    *The General Release*

Defendant's second argument is that the general release provides an alternative basis to dismiss the TAC.   Defendant relies primarily on a specific section of the general release because, although the franchisee plaintiffs did not sign the amendment, the language is binding on each of them as an affiliate:

> Developer [i.e., Plaintiff], *for itself and on behalf of itself for each Affiliate*, hereby remises, releases, acquits, satisfies, and forever discharges THUSA, . . . of and from all manner of claims, . . . *which Developer or any Affiliate* ever had, now has, or which any successor or assign of [Tim-Minn] or any Affiliate hereafter can, shall, or may have, whether known or unknown, against THUSA for, upon, or by reason of any matter, cause, or thing whatsoever, from the beginning of the world to the date of this Agreement.

[D.E. 81 at Ex. A, § 11 (emphasis added)].

Defendant says that the franchisee plaintiffs qualify as an "affiliate" because the ARDA defines that term as a "Person that directly or indirectly Controls, is Controlled by, or is under common Control with another Person," and where the "Developer Subsidiaries are Affiliates of Developer."   [D.E. 39 at Ex. AG, § 1.4]. Defendant also claims that the franchisee plaintiffs fit within this definition because they are "jointly owned by Tim Minn and RDP, Tim-Minn operated the restaurants through the Franchisee Plaintiffs and the Franchisee Plaintiffs operated under Tim-Minn's umbrella."   [D.E. 85 at 16 (citations omitted)].   Hence, Defendant asks that the Court dismiss the entire TAC because the general release applies to each plaintiff and each cause of action.   [D.E. 81 at Ex. A, § 11 (stating

that the general release applies to any claim that Tim-Minn or any affiliate "can, shall, or may have, whether known or unknown, against THUSA for, upon, or by reason of any, matter, cause or thing whatsoever").].

The general rule is that courts only consider the complaint and the attached exhibits when determining the merits of a motion to dismiss.  In this case, however, Plaintiffs referred to and attached the general release to the TAC and Defendant raises the defense in a Rule 12(b)(6) motion as an absolute bar.  Normally, a general release is an affirmative defense that is raised in a defendant's answer, and not Rule 12(b).  Yet, Defendant raises it here because the existence of a defense may be judged on the face of an exhibit which is attached to a complaint and made central to its claims.  *See Concorida v. Bendekovic,* 693 F.2d 1073 (11th Cir. 1982); *LeFrere v. Quezada,* 582 F.3d 1260 (11th Cir. 2009) (stating that, if a complaint contains a claim that is facially subject to an affirmative defense, it may be dismissed on a motion to dismiss for failure to state a claim).

That may be true but Defendant's argument goes awry as it requires the Court to determine, on the face of the pleading, the meaning of an "affiliate" without the benefit of any discovery or a factual record.  That is very problematic because, while Defendant assumes that the franchisee plaintiffs "are clearly 'affiliates' of Tim-Minn," that is not at all clear based on the allegations in the TAC.  [D.E. 85 at 16].  Plaintiffs never allege, for example, that the franchisee plaintiffs are "affiliates" within the meaning of the ARDA.  Defendant only comes to that conclusion because Tim-Minn owns the franchisee plaintiffs and operates the

restaurants.  Yet, the definition of an "affiliate" is based on control – not mere ownership – and the TAC makes no mention of any specific control that Tim-Minn has over the franchisee plaintiffs.[6]  [D.E. 39 at Ex. AG, § 1.4 ("'Affiliate' means a Person that directly or indirectly *Controls*, is Controlled by, or is under *common Control* with another Person.  For clarity, Developer Subsidiaries are Affiliates of Developer.") (emphasis added)].   It is therefore difficult to conclude that the franchisee plaintiffs qualify as an "affiliate" when the facts of this case are undeveloped, and the meaning of this term is undefined.

The same problem exists for the second part of the "affiliate" definition where it states that "[f]or clarity, the term Developer Subsidiaries are Affiliates of Developer."  *Id*. at § 1.20.   In looking at the definition of "Developer Subsidiaries," that refers to wholly owned direct subsidiaries that Defendant may form for the sole purpose of owning and operating restaurants:

> "Developer Subsidiaries" means the wholly owned, direct subsidiaries of Developer which Developer may, at its option, form for the sole purpose of owning and operating Direct-Owned TH Restaurants in the Development Area. For clarity, the term "Developer Subsidiary" shall refer to any one of the Developer Subsidiaries.

*Id*.  Yet, whether the franchisee plaintiffs are "direct subsidiaries" is uncertain – at least for now – because the TAC is silent on the corporate form for these entities. Defendant asks that we make inferences to determine the meaning of "affiliate" because of the ownership references that Plaintiffs make throughout the TAC.  But, that is not allowed because we would be guessing on the meaning of a definition

---

[6]      The ARDA is attached to the SAC, not the TAC.

without knowing all the facts with respect to Plaintiffs and how their corporate forms fit within the terms of the parties' agreement.

Defendant's alternative argument is that all of Tim-Minn's claims fail because of the general release language that applies to any claims "whether known or unknown, against THUSA for, upon, or by reason of any matter, cause or thing whatsoever[.]" [D.E. 81 at Ex. A, § 11]. But, Defendant omits the final clause of that sentence where it says that the agreement is only effective "from the beginning of the world *to the date of this Agreement*." *Id.* (emphasis added). This omission is significant because the agreement has no effect on claims that post-date the signing of the contract, or December 1, 2017. And it appears that a substantial number of Plaintiffs' claims arose *after* the parties signed the general release.

Defendant remains skeptical of the date that the claims arose because the "[c]omplaint is rife with allegations which make plain that the claims pre-date the December 2017 release." [D.E. 99 at 9]. Yet, given the procedural posture of this case and the undersigned's review of the relevant allegations, the answer to that question remains to be seen. Defendant has only shown that there are discrepancies as to when certain claims arose, but that is not enough to dismiss a complaint when the timetable of these claims are unclear. Furthermore, we are merely at the motion to dismiss stage without specific factual allegations or the benefits of discovery. It may very well be true that Defendant's argument has merit and that some of Plaintiffs' claims cannot survive. However, the effect of the general release and its relationship to the timing of Plaintiffs' claims cannot be

decided on the face of this pleading.  Defendant's motion to dismiss should therefore be **DENIED** and revisited either on a motion for summary judgment or at trial.

### E.   *Failure to State a Claim*

Defendant's final arguments are directed at each count in the TAC and their respective failures to state a claim.  Plaintiffs oppose these arguments because, in looking at the four corners of the complaint, all of the required allegations are presented.  Plaintiffs suggest that Defendant's motion invites the Court to look outside the pleading and to make unsupported inferences akin to a motion for summary judgment.  Since this is not allowed and the allegations are well pled, Plaintiffs ask that the motion to dismiss be denied in all respects.  We consider each argument in turn.

#### 1.   *Minnesota Franchise Act (Count 1)*

Defendant first seeks to dismiss the MFA claim in count one.  Plaintiffs allege that Defendant violated this statute[7] because, in a franchise disclosure document, it states that Defendant would charge a *reasonable* markup on goods that it requires franchisees to purchase.  [D.E. 81 at ¶ 159].  Plaintiffs claim that, in practice, the markups were objectively unreasonable and that, in some cases,

---

[7]    The relevant section of the MFA includes the following:

No person may offer or sell a franchise in this state by means of any written or oral communication which includes an untrue statement of a material fact or which omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

Minn. Stat. § 80C.13, subd. 2.

Defendant charged Tim-Minn between 20-50% above the market rate for necessary items that could not be procured through a different source.

Defendant says that count one fails for two reasons. First, Defendant asserts that, under the plain language of a financial disclosure statement, it has the discretion to determine what should be considered a reasonable markup:

> We and our affiliates may charge what we consider to be a reasonable mark-up on items sold to you.

[D.E. 81 at ¶ 137, n.6]. Defendant claims that this is fatal to count one because it has the discretion to determine a reasonable markup and Plaintiffs cannot second-guess that determination.

This is a weak argument because, although the TAC references an agreement where Defendant had the discretion to charge a reasonable markup, the facts are unclear as to how much discretion Defendant had in determining this amount. Defendant suggests that the analysis is simple and that there is no need to question the amount of any markup because the underlying agreement gave it unfettered discretion. But, it is uncertain what restrictions, if any, might apply to Defendant's decision-making. Defendant asserts that it could charge any amount it deems necessary and that Plaintiffs cannot question it. Yet, even if that is true, Defendant's argument requires a factual record to ascertain the (1) precise meaning of the language in the disclosure statement, (2) the level of discretion that Defendant possessed, and (3) what, if anything, qualifies as unreasonable. The answer to these questions cannot be decided on a motion to dismiss because, regardless of the inferences and assumptions that Defendant invites the Court to

make, there exists the possibility that Defendant is subject to some constraints in determining a reasonable markup. While Defendant maintains that this question can be decided solely on the pleadings, a factual record is required to give meaning to the language of the disclosure statement and how it operates. As a result, Defendant's motion to dismiss count one, for this reason, should be **DENIED**.

Defendant's second argument is that, although reasonable reliance is an essential element of a misrepresentation claim under the MFA, the TAC makes no mention of it. *See Teng Moua v. Jani-King of Minnesota, Inc.*, 810 F. Supp. 2d 882, 891 (D. Minn. 2011) ("[T]he Court is convinced that reasonable reliance is an element of a claim under the MFA."). Plaintiffs agree that reasonable reliance is an element of an MFA claim, but they argue that Defendant is mistaken because of one paragraph in the TAC. That paragraph states that "[t]he Franchisee Plaintiffs would not have entered into franchise agreements with THUSA, had the true nature of these so-called 'reasonable' mark-ups been made apparent." [D.E. 81 at ¶ 141]. Although the words, "reasonable reliance," do not appear in count one, Plaintiffs say that the allegations in paragraph 141 operate as a functional equivalent.

To prevail on a misrepresentation claim under the MFA, the weight of authority requires a plaintiff to prove that it reasonably relied on a misrepresentation. *See Teng Moua,* 810 F. Supp. 2d at 891 (acknowledging difference of opinion on whether reasonable reliance required for MFA misrepresentation claim and concluding that reasonable reliance is a necessary

element); *see also Ellering v. Sellstate Realty Sys. Network, Inc.,* 801 F. Supp. 2d 834, 845 n. 13 (D. Minn. 2011) (rejecting MFA claim where plaintiffs did not reasonably rely on alleged misrepresentations); *but see Randall v. Lady of Am. Franchise Corp.,* 532 F. Supp. 2d 1071, 1086 (D. Minn. 2007) ("[T]he Court is not convinced that justifiable or reasonable reliance is an element of a claim for misrepresentation under the Minnesota Franchise Act.").  Reliance is unreasonable as a matter of law where an oral representation is "plainly contradicted by the terms of [a] written contract." *Crowell v. Campbell Soup Co.,* 264 F.3d 756, 762 (8th Cir. 2001); *see also Ellering,* 801 F. Supp. 2d at 844–45 (dismissing MFA claim premised on earnings representation where agreement expressly disclaimed such representations); *Kieland v. Rocky Mountain Chocolate Factory, Inc .,* 2006 WL 2990336, at *8 (D. Minn. Oct. 18, 2006) (same).

The question here is whether the allegation – "[t]he Franchisee Plaintiffs would not have entered into franchise agreements with THUSA, had the true nature of these so-called 'reasonable' mark-ups been made apparent" – qualifies as reasonable reliance.  [D.E. 81 at ¶ 141].  Neither party relied on any authority for their respective arguments.  Defendant only says that it fails to equal reasonable reliance, and Plaintiffs reach the opposite conclusion.  Although the undersigned did not locate a case opining on the precise meaning of "reasonable reliance" under Minnesota law, the terms are not subject to much debate.  For example, the United States Supreme Court defines reasonable reliance as not knowing that an adversary's conduct is misleading.  *See, e.g., Heckler v. Cmty. Health Servs. of*

*Crawford Cty., Inc.*, 467 U.S. 51, 59 (1984) ("[R]eliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading.").  Other courts define the term as "reliance that is consistent with rational judgment and common sense, not foolhardy." *United States v. Theunick*, 2007 WL 2421539, at *3 (E.D. Mich. Aug. 27, 2007); *see also DPLM, Ltd. v. J.H. Harvey Co.,* 241 Ga. App. 219, 221-222 (1999) (finding that reasonable reliance "means that the plaintiff relied exclusively on such promise and not on his or her own preconceived intent or knowledge; that the plaintiff exercised due diligence, so as to justify reliance as a matter of equity; and that there was nothing under the circumstances which would prevent the plaintiff from relying to his detriment.").

Whatever definition that applies, the result is the same because the allegation that Plaintiffs rely upon does not necessarily equal reasonable reliance. It only shows that Plaintiffs would not have relied upon certain franchise agreements had they known of the actual markups that Defendant imposed.  While there may be an implicit implication that Plaintiffs would have exercised due diligence if they had greater knowledge and not relied on Defendant's markups, Plaintiffs need to make that clearer in an amended pleading.   And that should not require a Herculean effort.  Because count one is technically missing a required element to state an MFA claim, Defendant's motion to dismiss count one should be **GRANTED without prejudice**.

26

**2.      *Breach of the Implied Covenant Good Faith and Fair Dealing (Counts 2 and 8)***

Plaintiffs allege in counts two and eight a breach of the implied covenant of good faith and fair dealing.  Under these covenants, Plaintiffs assert that "each party has an obligation and duty to act fairly towards the other, to do nothing destructive of the other party's right to enjoy the fruits of the contract, and to do everything that the contract presupposes they will do to accomplish its purpose." [D.E. 81 at ¶ 167].  Plaintiffs accuse Defendant of violating these covenants in count two because the latter "provided incomplete, incorrect, and misleading financial information to Tim-Minn," *id*. at ¶ 169, "materially mislead [sic] the Franchisee Plaintiffs with promises of 'reasonable' markups on necessary purchase[s] and provided . . . bogus 'discounts,'" *id*. at ¶ 171, and "mask[ed] taxes and other fees." *Id*.   Count eight alleges a violation of the same covenants but focuses on Defendant's decision to file "an unnecessary, preemptive lawsuit in the Southern District of Florida," that now deters local property owners from doing business with Tim-Minn, *id*. at ¶ 218.

Defendant seeks to dismiss counts two and eight because Florida law does not recognize an independent claim for a breach of the implied covenant of good faith and fair dealing.  *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1317 (11th Cir. 1999) ("We hold that no independent cause of action exists under Florida law for breach of the implied covenant of good faith and fair dealing.").  Defendant also claims that the implied covenant of good faith only confers limited rights and that it cannot be maintained without a specific refence to an express contractual provision

that has been breached.  Because the TAC is silent on any express provision of the ARDA or the underlying franchise agreements, Defendant asks that both counts be dismissed.  *See id*. at 1318 ("Under Florida law, Weaver's failure to identify an express contractual provision that has been breached dooms his claim for breach of the implied covenant of good faith and fair dealing.").

Defendant's argument that an independent claim for a breach of the implied covenant of good faith and fair dealing does not exist under Florida law is mistaken. While the Eleventh Circuit found in *Weaver* that no independent cause of action exists under Florida law for a breach of the implied covenant of good faith and fair dealing, Defendant ignores the Court's discussion that immediately follows that statement:

> Where a party to a contract has in good faith performed the express terms of the contract, an action for breach of the implied covenant of good faith will not lie.  More specifically, a cause of action for breach of the implied covenant cannot be maintained (a) in derogation of the express terms of the underlying contract or (b) in the absence of breach of an express term of the underlying contract.

*Id.* at 1317-18.  This paragraph does not stand for the proposition that a party may never state a claim for breach of the implied covenant of good faith and fair dealing; it only means that the cause of action exists in limited circumstances.  *See, e.g.*, *Excess Risk Underwriters, Inc. v. Baltimore Life Ins. Co.*, 2006 WL 8433329, at *2 (S.D. Fla. May 17, 2006) ("T[]he undersigned does not find that *Weaver* stands for the proposition that a party may never maintain an independent cause of action for breach of the implied covenant of good faith and fair dealing, but merely holds that the cause of action will only lie under limited circumstances.").

This is consistent with Florida's appellate courts where they too have found that Florida contract law recognizes the implied covenant of good faith and fair dealing if it satisfies two conditions:

> Florida contract law recognizes the implied covenant of good faith and fair dealing in every contract. This covenant is intended to protect the reasonable expectations of the contracting parties in light of their express agreement. However, there are two restrictions on causes of action for the breach of good faith and fair dealing. First, the implied covenant of good faith should not be invoked to override the express terms of the agreement between the parties. Second, a claim for breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law absent an allegation that an express term of the contract has been breached.

*Southern Internet Systems. Inc. ex rel. Menotte v. Pritula*, 856 So. 2d 1125, 1127 (Fla. 4th DCA 2003) (quoting *Insurance Concepts and Design, Inc. v. Healthplan Services, Inc.,* 785 So. 2d 1232, 1234-35 (Fla. 4th DCA 2001)). So, while a breach of the implied covenant of good faith and fair dealing is not technically an independent cause of action, it is a theory of liability because it "attaches to the performance of a specific contractual obligation." *Centurion Air Cargo v. UPS Co.,* 420 F.3d 1146, 1151–52 (11th Cir. 2005).

Having cleared up that confusion, Plaintiffs' response is that counts two and eight meet all the requirements to state a claim. Plaintiffs also say that their allegations reference the relevant contractual agreements and that both counts should stand. However, in looking at count two and eight, Plaintiffs only make passing references to the ARDA and the franchise agreements without specifying the actual contractual provision that Defendant breached. Plaintiffs suggest that this is inconsequential because the allegations in count two are "clearly[] a

reference to Item 8 in the FDD, which [Defendant] knows full well is incorporated into the Franchise Agreements signed by the Franchisee Plaintiffs." [D.E. 95 at 26].

While those suspicions as to Defendant's knowledge might be true, that is not the standard that applies. Plaintiffs must identify the actual contractual provision that Defendant breached to allege a violation of the covenant of good faith and fair dealing. *See, e.g.*, *Regency Of Palm Beach, Inc. v. QBE Ins. Corp.*, 2009 WL 2729954, at *4 (S.D. Fla. Aug. 25, 2009) ("Count IV for breach of the implied covenant of good faith and fair dealing must fail as a matter of law because Regency cites no express provision of the Contract that had been breached. Under Florida law, Regency's failure to identify an express contractual provision that has been breached dooms its claim for breach of the implied covenant.") (citing *Weaver,* 169 F.3d at 1318). But, there is no specific contractual provision referenced in count two and Plaintiffs cannot fix this mistake or amend the TAC in response to a motion to dismiss because those allegations must be included in the pleading itself. *See Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) ("[P]laintiffs cannot amend their complaint through a response to a motion to dismiss.") (citing *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009)); *see also Tsavaris v. Pfizer, Inc.*, 2016 WL 375008, at *3 (S.D. Fla. Feb. 1, 2016) ("A plaintiff, though, cannot amend the complaint in a response to a motion to dismiss, for a court's review on dismissal is limited to the four corners of the complaint.") (citing *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).

Plaintiffs try a similar tactic in connection with count eight because, rather than pointing to a specific contractual provision, they say that the "obligations are explicitly set forth in the ARDA and Amended ARDA."  [D.E. 95 at 27].  Yet, the TAC makes no mention of where the relevant provision is located.  And Plaintiffs fail to point to anything specific in either the pleading or in its response to the motion to dismiss, leaving count eight in worse shape than count two.  It is therefore unclear where the relevant contractual provision is located and that cannot stand for the same reasons provided in connection with count two.  *See Stallworth v. Hartford Ins. Co.*, 2006 WL 2711597, at *6 (N.D. Fla. Sept. 19, 2006) "[I[n order to state a claim for breach of the implied covenant of good faith and fair dealing, [p]laintiffs must identify the specific contract term(s) giving rise to the implied duty of good faith and also allege how [d]efendants breached their implied duty, alleging facts different from those giving rise to the breach of contract claim.").  For these reasons, Defendant's motion to dismiss the implied covenant of good faith and fair dealing claims in two and eight should be **GRANTED without prejudice**.

### 3.     *Fraud and Negligent Misrepresentation (Counts 3 and 4)*

Counts three and four assert claims for fraud and negligent misrepresentation.  Plaintiffs allege, in both counts, that Defendant provided false and misleading financial information to Tim-Minn to induce the signing of the ARDA.  Plaintiffs assert, for example, that Defendant "knowingly appended invalid SEC Safe Harbor disclaimers to its disclosures in a naked attempt to insulate itself from liability," and took advantage of Tim-Minn's lack of sophistication and

experience in the service restaurant industry.  [D.E. 81 at ¶¶ 178-79].  Because Tim-Minn justifiably relied on these representations, Plaintiffs seek damages for Defendant's actions.

Defendant says that both counts are defective because, under Florida law, justifiable reliance is an element of fraud and negligent misrepresentation, and that Tim-Minn cannot meet this essential element.  *See S.K.Y. Mgmt. LLC v. Greenshoe, Ltd.*, 2007 WL 9701121, at *5 (S.D. Fla. Mar. 11, 2007) ("Florida law is clear that reliance is an essential element of a claim for fraud or negligent misrepresentation even when the claim is based on a misrepresentation.") (citing cases).

Defendant relies primarily on the contractual language in the ARDA because it includes a disclaimer where Plaintiffs concede that they received no representations with respect to revenue, profit, or the potential success of this business industry:

> Developer has not received or relied upon, and THUSA expressly disclaims making any representation, warranty or guaranty, express or implied, as to the revenues, profits or success of the TH Development Business.

[D.E. 39 at Ex. AG, § 17(e)].  Since this disclaimer is dispositive, Defendant concludes that it is not plausible for Plaintiffs to have justifiably relied on any representation.

Before tackling that issue, we outline the elements of each tort.  "The tort of fraud has five elements: (1) false representation by a defendant; (2) scienter; (3) intention to induce the plaintiff to act or refrain from acting in reliance upon the representation; (4) justifiable reliance by the plaintiff upon the representation; and

(5) damage to the plaintiff directly and proximately caused by the reliance." *TSG Water Res., Inc. v. D'Alba & Donovan Certified Pub. Accountants, P.C.*, 260 F. App'x 191, 199 (11th Cir. 2007) (citation omitted). "To show justifiable reliance to support a common law fraud claim, a plaintiff must prove that it exercised due care to discover the fraud." *Id.* at 200 (internal quotations and citation omitted). "[Q]uestions of due diligence often must be resolved by the trier of fact." *Id.* (quoting *Fowler v. Overby*, 223 Ga. App. 803 (1996)).

To prove fraud, Plaintiffs must also show that Defendant had the "intent to mislead." *Id.* at 201. "'A misrepresentation is intended to deceive where there is intent that the representation be acted upon by the other party.'" *Id.* (quoting *Petzelt v. Tewes*, 581 S.E.2d 345, 347 (2003)). The Eleventh Circuit has explained that because "[p]roof of fraud is typically not susceptible of direct proof . . . circumstantial evidence must be used to establish fraudulent intent." *Id.* at 201-02. Thus, "it is peculiarly the province of the jury to pass on these circumstances showing fraud. Except in plain and indisputable cases, scienter in actions based on fraud is an issue of fact for jury determination." *Id.* at 202.

Florida law also recognizes a tort claim for negligent misrepresentation. *See Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010). The elements of a negligent-misrepresentation claim include the following:

> (1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the

plaintiff to rely . . . on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation.

*McGee v. JP Morgan Chase Bank, NA,* 520 F. App'x 829, 831 (11th Cir.2013) (quoting *Simon v. Celebration Co.,* 883 So. 2d 826, 832 (Fla. 5th DCA 2004)).

Claims for negligent misrepresentation must be pled in detail to meet the particularity standard required by Rule 9(b) for fraud claims because, in Florida, "negligent misrepresentation sounds in fraud." *Id.; see Linville v. Ginn Real Estate Co.,* 697 F. Supp. 2d 1302, 1306 (M.D. Fla. 2010); *C.S.I.R. Enters., Inc. v. Sebrite Agency, Inc.,* 214 F. Supp. 2d 1276, 1281 (M.D. Fla. 2002). That means Plaintiffs' allegations must satisfy Rule 9(b)'s specificity requirements by setting forth:

> (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

*McGee,* 520 F. App'x at 831 (quoting *FindWhat Investor Grp. v. FindWhat.com,* 658 F.3d 1282, 1296 (11th Cir. 2011)).  The pleading may use, in the alternative, means reasonably calculated to notify a defendant with particularity of his alleged role in the fraud.  *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997).

Here, Defendant takes aim at the justifiable reliance[8] element because the disclaimer in the ARDA dooms any possibility that fraud or negligent misrepresentation applies to the facts of this case.  The problem with Defendant's argument is that the disclaimer only applies "to the revenues, profits, or the success of the TH Development Business."  [D.E. 39 at Ex. AG, § 17(e)].  Yet, the TAC never specifies the financial information that is at issue with respect to the fraud and negligent misrepresentation claims.  It only says that Defendant's "false, misleading, and incomplete financial disclosures were known . . . to be false, misleading, and/or incomplete at the time they were disclosed to Tim-Minn."  [D.E. 81 at ¶ 178]; *id.* at ¶ 184 ("Tim-Minn was justified in its reliance upon the THUSA-supplied financial data.").  Whether this "financial data" fits within the disclaimer is unclear because the allegations are nonspecific and therefore unsuitable to warrant dismissal.

The argument that Defendant should have made is that counts three and run afoul of the pleading requirements under Rule 9(b).  *See Merino v. Ethicon Inc* 2021 WL 1749967, at *11 (S.D. Fla. May 4, 2021) ("A heightened standard of particularity applies to claims of fraudulent concealment, constructive fraud, and negligent misrepresentation.") (citing Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud

---

[8]    Reliance requires a plaintiff to establish that, but for the alleged misrepresentation or omission, the plaintiff would not have entered into the transaction at issue.  *See, e.g., State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So. 2d 1210, 1213-14 (Fla. 5th DCA 1995) ("Fraud requires inducing a person to take an action he has no obligation to take, nor intent to take without the misrepresentation.").

or mistake."); *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 951 (11th Cir. 2014) ("Rule 9(b)'s heightened pleading standard applies to negligent misrepresentation claims.")); *see also Souran v. Travelers Ins. Co.,* 982 F.2d 1497, 1511 (11th Cir. 1993) (negligent misrepresentation claim sounds in fraud under Florida law). If Defendant had made that argument, it would have been far stronger because Rule 9(b) requires a "plaintiff to plead the who, what, when, where, and how of the allegedly fraudulent statements or omissions," and the allegations here are so generic that it is unclear what financial data is even at issue. *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1342 (S.D. Fla. 2013). Defendant failed, however, to make that argument. Because Defendant opted not to dismiss the TAC on 9(b) grounds and relied solely on a disclaimer clause that cannot apply given the generic allegations presented in the TAC, the motion to dismiss counts three and four should be **DENIED**.

### 4. *Breach of Contract (Counts 5 and 7)*

Plaintiffs allege in counts five and seven two claims for breach of contract. "To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Vega v. T–Mobile USA, Inc.,* 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *St. Joe Corp. v. McIver,* 875 So. 2d 375, 381 (Fla. 2004)). Consideration is "the primary element moving the execution of a contract," *Frissell v. Nichols*, 94 Fla. 403, 114 So. 431, 434 (Fla. 1927), and "absolutely necessary to the forming of a good contract," *Jones v. McCallum*, 21 Fla. 392, 392 (Fla. 1885).

Count five alleges that the franchisee plaintiffs and Defendant executed a contract where the latter promised to charge the former a reasonable mark-up on items purchased for business operations. Plaintiffs argue that Defendant violated this agreement because the amount charged was unreasonable, that the franchisee plaintiffs suffered damages, and that the allegations meet all the requirements to state a claim under Florida law.

Defendant's only challenge to count five is that it fails to state a claim because, as Plaintiffs admitted in the TAC, the agreement gave Defendant the *discretion* to determine what qualifies as a reasonable markup:

> We and our affiliates may charge what we consider to be a reasonable mark-up on items sold to you.

[D.E. 81 at ¶ 137, n.6]. This is the same argument discussed earlier in count one and it fails for the reasons already identified because it requires a factual record to determine if Defendant had unfettered discretion to determine any markup it desired. Because we cannot decide this question on the pleadings and decline to rely on unsupported assumptions or inferences, Defendant's motion to dismiss count five should be **DENIED**.

Turning to the breach of contract claim in count seven, Plaintiffs allege that Defendant failed to comply with unspecified franchise agreements that required the latter to provide training, operational support, and other tasks to ensure that Plaintiffs had what they needed to meet certain obligations:

> Under the terms of these agreements, THUSA, was obligated to perform certain obligations, including but not limited to providing training and operational support and manuals to Tim-Minn and the

37

> Franchisee Plaintiffs, providing access to proprietary computer systems such as TimTrac, and to ensure Tim-Minn and the Franchisee Plaintiffs had what they needed to meet their obligations under the terms of the ARDA and/or Amended ARDA, as well as the various franchise agreement.

[D.E. 81 at ¶ 210].  Plaintiffs claim that Defendant's failure to comply with these contractual requirements "made it impossible for Tim-Minn and the Franchisee Plaintiffs to perform their own obligations due to the fact that Tim-Minn and the Franchisee Plaintiffs' performance was often contingent upon THUSA's performance, which was constantly delayed or wholly defaulted."  *Id*. at ¶ 212. Plaintiffs further add that, as a direct and proximate result of this breach, they suffered damages and that all the elements for a breach of contract are properly alleged.

Defendant takes issue with count seven because Plaintiffs fail to reference any provision of an agreement where the alleged breach took place.  Defendant points, for instance, to a reference in the TAC that mentions a failure to provide a training manual.  But, Defendant says that the ARDA does not contain such a requirement.  Defendant asserts that the ARDA only references a developer manual and that it constitutes "a document that [Defendant] *may* publish and modify from time to time[.]". [D.E. 39 at Ex. AG, § 1.19 (emphasis added)].  Defendant claims that this cannot qualify as a breach because it retains the sole discretion to publish and modify a developer manual.  Defendant also targets the allegation that it failed to provide Plaintiffs with access to proprietary computer systems because, earlier in the TAC, Plaintiffs acknowledge that they had access to one particular system,

called TimTrac, in October 2016.  [D.E. 81 at ¶ 104 ("TimTrac access was withheld for several months, until October 2016 when THUSA eventually provided limited access to the system.")].  Either way, Defendant asks that the Court dismiss count seven because Plaintiffs have not referenced a specific contractual provision that points to a breach of contract.

Defendant's argument is well taken – at least with respect to the failure to identify a specific contractual agreement or provision – because the allegations in the TAC are plainly insufficient.  While Plaintiffs make passing references to a breach of "franchise agreements," it never identifies the specific contract or provision that is subject to the alleged breach.  The Eleventh Circuit considered this defect in *Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358–59 (11th Cir. 2020), where it found that a plaintiff could not make general assertions of a breach without identifying the specific provisions or agreements that were at issue:

> The District Court noted that Bass only 'generally asserted' a breach of contract, without identifying 'any provisions or any specific agreements that were breached, nor excerpt[ing] any relevant portions of an agreement to allege the existence of a valid contract.'  We agree that this was insufficient to state a claim because Bass has not alleged any general or specific provision of any contract that Fidelity might have breached.  Bass, therefore, failed to meet his pleading requirements.  Consequently, the District Court properly dismissed Bass's breach of contract claim.

*Id*. at 1359.  Indeed, "[i]t is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached." *Herssein Law Grp. v. Reed*

*Elsevier, Inc.*, 594 F. App'x 606, 608 (11th Cir. 2015) (citing *Harris v. Am. Postal Workers Union,* 198 F.3d 245 (6th Cir. 1999)).

The same reasoning applies here because, although Plaintiffs reference unspecified franchise agreements, it does so only generically.  That is inadequate because Plaintiffs need to reference specific provisions in each agreement so that Defendant and the Court are aware of what breach took place.  Plaintiffs may complain that the relevant contract is attached either to the TAC or somewhere on the docket.  But, "simply appending a contract to a complaint alleging only a threadbare recital of the elements of a contract claim is insufficient."  *St. Michaels Anglican Cath. Church of Panama City Fla. Inc. v. Church Mut. Ins. Co.*, 2020 WL 9209711, at *1 (N.D. Fla. Oct. 15, 2020) (citing  *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 664 n.3 (11th Cir. 2015) (affirming dismissal of breach of contract claim where plaintiffs did not identify which provisions were allegedly breached even though contracts were in the record); *Wohl Built, Inc. v. Maxum Indem. Co.*, 2017 WL 10410373, at *2 (S.D. Fla. Dec. 21, 2017) ("Although Plaintiff attached the Policy, merely doing so is insufficient to survive a motion to dismiss absent pleading which specific provision of the Policy Defendant is alleged to have breached.")).  Thus, Defendant's motion to dismiss count seven should be **GRANTED without prejudice**.

### 5.    *Unjust Enrichment (Counts 6 and 11)*

Counts six and eleven contain separate causes of action for unjust enrichment.  First, Plaintiffs allege in count six that Defendant engaged in a

practice of unreasonable markups on equipment, used middlemen to inflate costs, and improperly calculated fees to obtain additional compensation:

> The money received by [Defendant] from these mark-ups and bogus discounts was unconscionably obtained because Defendant unreasonably aggregates through middlemen which causes additional costs to be passed down the chain to the Franchisee Plaintiffs and, with respect to the bogus discount scheme, Defendant unreasonably and improperly calculated fees due and owing to it in order to obtain additional compensation it was not entitled to.

[D.E. 81 at ¶ 200]. Plaintiffs claim that Defendant accomplished this feat "by virtue of the franchise agreement," where Defendant "received thousands of dollars in payments from the unreasonable mark-ups imposed on goods and services required by [Defendant] for use in its shop." *Id.* at ¶ 197. Second, Plaintiffs allege in count eleven that Defendant failed to charge the franchisee plaintiffs an appropriate percentage of gross sales as required under the ARDA. And even if no contractual provision protects their interests, Plaintiffs say that they are still entitled to relief because it would be manifestly unjust for Defendant to obtain revenues in contravention of their reasonable expectations. *See id.* at ¶ 200.

"To establish unjust enrichment under Florida law, a plaintiff must prove that '(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff.'" *Rosado v. Barry Univ., Inc.*, 499 F. Supp. 3d 1152, 1159 (S.D. Fla. 2020) (quoting *Duty Free World, Inc. v. Mia. Perfume Junction, Inc.*, 253 So. 3d 689, 693 (Fla. 3d DCA 2018)).

"Generally, '[n]o cause of action in unjust enrichment can exist where the parties' relationship is governed by an express contract.   This is because the theory of unjust enrichment is equitable in nature and is, therefore, not available when there is an adequate legal remedy." *Frayman v. Douglas Elliman Realty, LLC*, 2021 WL 299951, at *16 (S.D. Fla. Jan. 25, 2021) (quoting *Zarella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010)).   "However, this rule does not apply where one of the parties asserts that the contract governing the dispute is invalid." *Am. Infoage, LLC v. Regions Bank*, 2014 WL 4794748, at *6 (M.D. Fla. Sept. 25, 2014) (citation omitted).   "It is only upon a showing that an express contract exists that the unjust enrichment . . . count fails.   Until an express contract is proven, a motion to dismiss a claim for   .  .  .   unjust enrichment on these grounds is premature." *Mobil Oil Corp. v. Dade Cnty. Esoil Mgmt. Co.*, 982 F. Supp. 873, 880 (S.D. Fla. 1997) (citation omitted).

Defendant asks that the Court dismiss counts six and eleven because Plaintiffs cannot plead a breach of contract claim alongside unjust enrichment especially where the allegations reference an express contract.   But, at the pleading stage, "Plaintiffs are not precluded from pleading claims for both breach of contract and unjust enrichment." *Saxon Fin. Grp., Inc. v. Rath*, 2012 WL 3278662, at *7 (S.D. Fla. Aug. 9, 2012) (citing *Williams v. Bear Stearns & Co.,* 725 So. 2d 397, 400 (Fla. 5th DCA 1998) ("Until an express contract is proven, a motion to dismiss a claim for   .  .  .   unjust enrichment on these grounds is premature."); *see  also* Rule 8(d)(2) of the Federal Rules of Civil Procedure ("[A] party may set out 2 or more

statements of a claim or defense alternatively or hypothetically"); *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC,* 650 F. Supp. 2d 1213, 1229 (S.D. Fla. 2009)).  Defendant's argument is also mistaken because "it is not the allegation of the existence of a contract, but the showing that an express contract exists that will cause the unjust enrichment count to fail."  *Saxon Fin. Grp., Inc.*, 2012 WL 3278662, at *7 (citing *Williams,* 725 So. 2d at 400).  That is, until Plaintiffs *prove* that an express contract exists for the relief they seek, Defendant's motion to dismiss the unjust enrichment claims in counts six and eleven is premature and, as a result, should be **DENIED**.  *See Saxon Fin. Grp., Inc.*, 2012 WL 3278662, at *7 ("Until an express contract is proven, a motion to dismiss a claim for unjust enrichment on these grounds is premature.").

### 6.    *FDUTPA (Count 9)*

Count nine alleges a cause of action under FDUTPA.  Plaintiffs claim that Defendant violated FDUTPA because it "failed to comply with the Trade Regulation Rules promulgated by the FTC relating to 'Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures,' set forth at 16 C.F.R. 436."  [D.E. 81 at ¶ 228].

FDUTPA broadly prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. §501.204(1).  The purpose of the statute is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. §

501.202(2).   A cause of action arising under FDUPTA has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Virgilio v. Ryland Grp., Inc.,* 680 F.3d 1329, 1338 n. 25 (11th Cir.2012) (quoting *Rollins, Inc. v. Butland,* 951 So. 2d 860, 869 (Fla. 2d DCA 2006)).  "A deceptive act or practice is 'one that is likely to mislead consumers and unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *State Farm Mut. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1300 (S.D. Fla. 2018) (citing *Hucke v. Kubra Data Transfer, Corp.*, 160 F. Supp. 3d 1320, 1328 (S.D. Fla. 2015)).

A plaintiff can satisfy the first element of FDUTPA claim by alleging either a traditional  or *per se* violation.   *Id.* (internal citations omitted).   A traditional violation requires a showing that a defendant "engaged in '[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in  the  conduct  of any trade or commerce.'"   *Id.* (citing Fla.  Stat.  § 501.204(10)).  On the other hand, "[a] *per se* violation is established in one of two ways: (1) if the 'law, statute, rule, regulation, or ordinance' expressly constitutes a violation of the  FDUTPA or  (2)  the  statute, rule,  or  ordinance proscribes unconscionable, deceptive, or unfair acts or practices and therefore operates as an implied FDUTPA predicate."  *Id.* (citing Fla. Stat. § 501.203(3)(c)).

Here,  count  nine  is  inadequate  because,  while  Plaintiffs  allege  that Defendant violated the Federal Trade Commission's disclosure requirements set

forth at 16 C.F.R. § 436, there are no allegations to explain their entitlement to damages.  Plaintiffs only state that Defendant violated some unknown provision of this regulatory framework.  But, without an allegation to connect Plaintiffs' damages to the deceptive act or unfair practice, it is unclear what Defendant violated in the first place.  *See Hakim-Daccach v. Knauf Int'l GmbH*, 2017 WL 5634629, at *7 (S.D. Fla. Nov. 22, 2017) ("Even if [the plaintiff] has successfully pleaded a deceptive act or unfair practice, his claim still fails because he has not properly alleged the basis for his entitlement to damages.  Further, even if he had properly alleged his damages entitlement, he has failed to sufficiently allege a connection between those damages and any deceptive act or unfair practice").

Plaintiffs point to several earlier paragraphs in the TAC to show that the pleading is clear and that the FDUTPA count is adequately pled.  But, these allegations are insufficient because there is no specificity as to what disclosure is at issue.  And merely referencing twenty or more paragraphs without a clear and concise explanation of the FDUTPA claim does not aid the Court in understanding the claim presented.  Plaintiffs' citations to 16 C.F.R. § 436 are also unavailing in the TAC because none of them reference a specific violation that spells out how Defendant ran afoul of the FTC's regulations.

In short, Plaintiffs must do more to state a FDUTPA claim – or at least repackage the existing allegations to make it clear what regulatory violation is at issue – because count nine is too conclusory and ambiguous as drafted.  *See, e.g.*, *Infinity Glob., LLC v. Resort at Singer Island, Inc.*, 2008 WL 1711535, at *4 (S.D.

Fla. Apr. 10, 2008) ("To state a cause of action under FDUTPA, a plaintiff must do more than merely allege in a conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant acted 'wrongfully, unreasonably and unjustly' and for a 'deceptive and improper purpose.'") (quoting *Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A., Inc.*, 2005 WL 975773, at \*8 (S.D. Fla. Mar. 4, 2005) (recommending dismissal of FDUTPA count where count contained only conclusory allegations of deceptive conduct and lacked sufficient factual allegations of "unfair or deceptive" conduct; stating, "To reiterate for emphasis, Defendants must do more than merely recite conclusory allegations; they must allege facts which properly raise recognizable FDUTPA claims.")). Defendant's motion to dismiss count nine is therefore **GRANTED without prejudice**.

### 7.      *Breach of Contract (Count 10)*

Defendant's final argument seeks to dismiss the breach of contract claim in count ten.  Plaintiffs allege here that the ARDA is a binding contract and that, among its provisions, it contains a condition where Defendant could assess the franchises a reduced royalty of 0.1% of gross sales for the period between June 1, 2017, and December 31, 2018, and 3% of gross sales for the next twelve months. Plaintiffs claim that Defendant failed to properly charge them an appropriate percentage during the period prior to December 31, 2017 and that, when they advised Defendant of this misstep, Defendant failed to make any corrections. Because Defendant engaged in fraudulent billing practices to obtain an unearned

financial advantage, Plaintiffs suffered significant financial losses.

Defendant says that the problem with count ten is that the TAC only points to one plaintiff – Brooklyn Park – that suffered any harm. Defendant also contends that, to the extent it failed to properly pay any royalties, the general release bars all of Plaintiffs' claims, whether known or unknown for amounts paid prior to December 31, 2017. Neither argument is persuasive because count ten only references Brooklyn Park, as an example of a plaintiff that suffered harm. [D.E. 81 at 234 ("THUSA did not properly charge the Franchisee Plaintiffs, such as Brooklyn Park, an appropriate percentage of gross sales during the period prior to December 31, 2017.")]. It does not limit the harm suffered only to Brooklyn Park.

The remaining argument is equally unpersuasive because the general release is only effective until December 2017 and many of the franchisee plaintiffs were not in existence at that time. This means that, at best, the general release can only offer partial relief to the alleged breach of contract. But, of course, we cannot determine how the general release applies because that requires a factual record with respect to its terms, the timing of the wrong suffered, and the specific plaintiffs that existed at the time. These questions and more must be answered in discovery with the question revisited either on a motion for summary judgment or at trial.

Although Defendant's argument misses the mark, this does not mean that count ten is properly pled. Plaintiffs reference the ARDA and says that some unknown provision requires Defendant to pay a percentage of certain royalties. But, like the breach of contract claim in count seven, Plaintiffs must identify the

specific provision that Defendant breached.  Plaintiffs make the same mistake discussed earlier because count ten only contains a generic reference to a contractual requirement with no specificity as to where that provision is located. Accordingly, Defendant's motion to dismiss count ten should be **GRANTED without prejudice** so that Plaintiffs can identify the specific contractual provision that Defendant breached.  *See Burgess*, 600 F. App'x at 664 (affirming the dismissal of a complaint because "the plaintiffs failed to . . . identify the specific contractual provisions that the defendants breached.").

## IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED in part** and **DENIED in part**:

A.   Defendant's motion to dismiss counts one, two, seven, eight, nine, and ten should be **GRANTED without prejudice**.

B.   In all other respects, Defendant's motion to dismiss should be **DENIED**.

C.   Any amended complaint should be due within fourteen (14) days from the date the District Judge adopts this Report and Recommendation.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties

48

from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 2nd day of August, 2021.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge