**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 20-23481-WILLIAMS/TORRES

TIM-MINN, INC., et al.,

      Plaintiffs,

v.

TIM HORTONS USA INC.,

      Defendant.

_____/

<u>**DEFENDANT TIM HORTONS USA INC.'S MOTION FOR SUMMARY JUDGMENT**</u>
<u>**AND SUPPORTING MEMORANDUM OF LAW**</u>

Michael D. Joblove, Esq.
mjoblove@gjb-law.com
Jessica Serell Erenbaum, Esq.
jerenbaum@gjb-law.com
**GENOVESE JOBLOVE & BATTISTA, P.A.**
4400 Miami Tower
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 349-2300
*Counsel for Tim Hortons USA, Inc.*

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ...................................................................................................1

II.   UNDISPUTED FACTS .........................................................................................3

III.   MEMORANDUM OF LAW ..................................................................................3

    A.   Standard of Review.....................................................................................3

    B.   THUSA is Entitled to Summary Judgment on Tim-Minn's Claims........................4

        1.   The Release Bars Tim-Minn's Claims in Counts III, IV and VII...............5

            a.   The Release Bars Tim Minn's Fraud and Negligent Misrepresentation Claims in Counts III and IV ..............................7

            b.   The Release Bars Tim-Minn's Breach of the ARDA Claim in Count VII ...................................................................7

        2.   Additional Reasons Supporting THUSA's Entitlement to Summary Judgment on Tim-Minn's Claims .............................................8

            a.   Counts III & IV (Claims of Fraud and Negligent Misrepresentation) Alternatively Fail ..............................................8

            b.   THUSA is Likewise Alternatively Entitled to Summary Judgment on Tim-Minn's Breach of Contract Claim in Count VII .....................................................................................10

                i.   THUSA Did Not Breach the ARDA.................................10

                ii.   THUSA Did Not Breach the Amendment ........................12

            c.   THUSA is Alternatively Entitled to Summary Judgment on Tim-Minn's Breach of the Implied Covenant Claim in Count VIII.................................................................................13

            d.   THUSA is Entitled to Summary Judgment on Plaintiffs' Breach of Contract Claim in Count X............................................14

    C.   THUSA is Entitled to Summary Judgment on the Franchisee Plaintiffs' Claims .....................................................................................14

        1.   The Release Bars Pre-Release Claims of the Franchisee Plaintiffs...........................................................................................15

a.      The Release Binds the Franchisee Plaintiffs.................................15

b.      THUSA is Entitled to Summary Judgment on the Franchisee Plaintiffs' Pre-Release Claims....................................17

2.      Even were the Release Inapplicable, THUSA Would be Entitled to Summary Judgment against the Franchisee Plaintiffs...............................................................................................18

a.      THUSA is Entitled to Summary Judgment on the MFA Claim (Count I)....................................................................18

b.      Summary Judgment Should Be Entered Against the Franchisee Plaintiffs on their Breach of Implied Covenant of Good Faith Claim in Count II ..................................20

c.      THUSA is Entitled to Summary Judgment on the Franchisee Plaintiffs' Breach of Contract Claim in Count V ...................................................................................21

d.      The Franchisee Plaintiffs' Unjust Enrichment Claims in Counts VI Fails  .............................................................21

e.      THUSA is Entitled to Summary Judgment on the Franchisee Plaintiffs' Breach of Contract Claim in Count VII .................................................................................22

f.      THUSA is Entitled to Summary Judgment on the Franchisee Plaintiffs' FDUTPA Claim in Count IX....................22

g.      THUSA is Entitled to Summary Judgment on the Franchisee Plaintiffs' Unjust Enrichment Claim in Count XI..................................................................................24

D.      Plaintiffs' Claims Fail Because They Seek to Recover Damages Allegedly Incurred by Non-Parties or Because the Alleged Damages Were not Proximately Caused by any THUSA Wrongdoing ................................25

IV.      CONCLUSION.............................................................................................26

CASE NO. 20-23481-WILLIAM/TORRES

Defendant Tim Hortons USA Inc. ("**THUSA**"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, files this Motion for Summary Judgment as to the Fourth Amended Complaint [DE 109] filed by Bemidji - 100 Paul Bunyan Drive South - 7911, LLC ("**Bemidji**"), Brainerd - 520 W Washington Street - 6677 LLC ("**Brainerd**"), Brooklyn Center - Brooklyn Boulevard 7924 LLC ("**Brooklyn Center**"), Dinkytown - 14th Avenue - 6649 LLC ("**Dinkytown**"), Eagan - Cliff Road - 6652 LLC ("**Cliff Plaza**"), Minneapolis - 3600 E Lake Street - 6676 LLC ("**East Lake**"), Forest Lake - 12th Street 7893 LLC ("**Forest Lake**"), International Falls - 2nd Avenue-6662 LLC ("**International Falls**"), Bloomington - Mall - 6648 LLC ("**MOA**"), Maplewood - 2158 Rice Street - 7895 LLC ("**Maplewood**"), Savage - Hwy 13 South - 7920 LLC ("**Savage**"), St Cloud - Roosevelt Road - 7919 LLC ("**St. Cloud**"), Saint Paul - Wabasha Street - 7929 LLC ("**Go Wild**"), and Brooklyn Park - 8500 Xylon Avenue 6651 LLC ("**Xylon**") (hereinafter collectively the "**Franchisee Plaintiffs**") and Tim-Minn, Inc. ("**Tim-Minn**") (the Franchisee Plaintiffs and Tim-Minn are hereinafter collectively the "**Plaintiffs**").

## I.   **INTRODUCTION**

Plaintiffs' claims arise based upon agreements surrounding the development of TIM HORTONS® branded restaurants in Minnesota. Plaintiff Tim-Minn and THUSA entered an Area Representative and Development Agreement ("ARDA"), and subsequent Amendment to Area Representative and Development Agreement ("Amendment") (Dep. I Exs. 8 & 10),[1] providing Tim-Minn with exclusive development rights in the state. Pursuant to the February 26, 2016 ARDA, Tim-Minn agreed to develop and operate roughly 280 TIM HORTONS® restaurants. Tim-Minn's present claims are that THUSA misrepresented the costs of developing

---

[1] The deposition of Paul Durigon, the corporate representative of all of the Plaintiffs, is being filed contemporaneously herewith. The December 29, 2021 deposition [DE 131] is hereinafter referred to as "Dep. I" and the exhibits from Dep. I are referred to as "Dep. I Ex." The December 30, 2021 deposition [DE 132] is hereinafter referred to as "Dep. II" and the exhibits from Dep. II are referred to as "Dep. II Ex."

1

locations and misstated expected revenues. Significantly, those claims were settled in December 2017 when the parties entered the Amendment which reduced Tim-Minn's development obligations from 280 locations to approximately 190 locations, and by which THUSA provided $1.5 million in marketing benefits. In return for these significant benefits, Tim-Minn executed a general release on behalf of itself and its "affiliates."

Despite the release, Tim-Minn filed this case, initially, in the U.S. District Court for the District of Minnesota. Before the case was transferred here, the Minnesota District Court enforced the release and dismissed Tim-Minn's Minnesota Franchise Act ("MFA") claims with prejudice. The court did not rule on the common law claims, leaving those claims for this Court's determination in accordance with the ARDA's forum selection clause mandating that litigation be in this forum. ([DE 59] at 7-13, 16).

After the Minnesota District Court transferred the remaining claims to this Court, Tim-Minn joined its subsidiaries/affiliates Franchisee Plaintiffs as additional plaintiffs under the vain hope that, by asserting the claims in the Franchisee Plaintiffs' names, Tim-Minn could avoid enforcement of the bargained for release. The Franchisee Plaintiffs are single asset entities created by Tim-Minn's owner that operated each of 14 TIM HORTONS® locations that Plaintiffs developed in Minnesota.

As evidenced herein, Plaintiffs' claims fail as a matter of law based upon the undisputed material facts. First, Tim-Minn's fraud and misrepresentation claims are barred by the general release. Plaintiffs' corporate representative—their owner Paul Durigon—acknowledged at deposition that the misrepresentation claims relating to potential earnings and expenses had accrued and were known at the time the general release was executed. Likewise, he testified that claims relating to Schedule As (i.e., lists of equipment sold by THUSA to Plaintiffs for their Tim Hortons restaurants) were also known at the time the release was executed. Clearly, those claims

are barred by the general release.

Plaintiffs' Fourth Amended Complaint asserts a smattering of other claims which likewise fail. These include: that THUSA's prices for various products had unreasonable markups, and that certain royalties were overcharged. However, Plaintiffs' corporate representative, Durigon, acknowledged in deposition testimony that Plaintiffs have no evidence to support the pricing claims and that any royalty issues have been resolved. Additionally, even if Plaintiffs could prove damages, the damages they seek to recover are damages incurred by their owners who are not party plaintiffs, and/or because the alleged damages were not proximately caused by breach of any legal duty owed.

As discussed in more detail herein, THUSA is entitled to summary judgment as a matter of law.

## II.      UNDISPUTED FACTS

As required by Local Rule 56.1(a), the Statement of Material Facts ("SMF") has been filed at [DE 129] and is incorporated herein.

## III.      MEMORANDUM OF LAW

### A.      Standard of Review

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing summary judgment is appropriate, and all facts and inferences from the record must be viewed in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). However, the non-moving party bears the burden of coming

forward with evidence of each essential element of its claims or defenses, such that a reasonable jury could return a verdict in that party's favor. *See Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 944 F. Supp. 2d 1258, 1261 (Hurley, J.) (citing *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002)).

"In response to a properly supported motion for summary judgment, 'an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (citing Fed. R. Civ. P. 56(e)). "Only disputes over facts that might affect the outcome of the suit under the governing [substantive] law will properly preclude the entry of summary judgment." *Crystal Colony Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 6 F. Supp. 3d 1295, 1298 (S.D. Fla. 2014) (Williams, J.) (citation omitted). "The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on the basis of which a jury could reasonably find for the non-movant." *Wendel v. Int'l Real Est. News, LLC*, No. 19-21658-CIV-KMW, 2021 WL 193752, at *2 (S.D. Fla. Jan. 20, 2021) (Williams, J.). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Cobra Int'l, Inc. v. BCNY Int'l, Inc.*, No. 05-61225, 2012 WL 1021808, at *10 (S.D. Fla. Mar. 27, 2012).

## B.    THUSA is Entitled to Summary Judgment on Tim-Minn's Claims

Tim-Minn has asserted the following claims against THUSA in the Complaint: Counts III and IV are for fraud and negligent misrepresentation which allegedly induced Tim-Minn's entry of the ARDA based on information THUSA purportedly provided to Tim-Minn in 2015 and 2016 (which included an FDD[2] and a Data Pack that contained financial information regarding

---

[2] A Franchise Disclosure Document, or FDD, is a document that a franchisor must provide to a prospective franchisee before a franchise can be sold to the prospective franchisee and is

anticipated sales, food and equipment costs, capital expenditures, and related information) (SMF ¶¶17, 18, 23, 24); Count VII for breach of contract based on THUSA's alleged breaches of the ARDA and Amendment by failing to provide training and operational support manuals and a developer manual, by failing to provide access to software known as TimTrac, by failing to assist Tim-Minn with marketing, and by providing incomplete, inconsistent, and incorrect prices in the Schedule As[3] ([DE 109] ¶219; SMF ¶25-31); Count VIII for breach of the implied covenant of good faith and fair dealing based on THUSA's filing of a lawsuit against some of the Plaintiffs to recover amounts they owed under various agreements between the parties ([DE 109] ¶228-229; SMF ¶34-35); and Count X for breach of contract based on THUSA's alleged improper royalty charges to a franchisee plaintiff under the Amendment ([DE 109] ¶253-6; SMF ¶36).

### 1. The Release Bars Tim-Minn's Claims in Counts III, IV and VII

In December, 2017, Tim-Minn and THUSA entered the Amendment which includes the following broad release:

> **GENERAL RELEASE.** For and in consideration of THUSA entering into this Agreement, and other good and valuable consideration received from or on behalf of THUSA, the receipt of which is hereby acknowledged, [Tim-Minn], for itself and **on behalf of itself for each Affiliate**, hereby remises, releases, acquits, satisfies, and forever discharges THUSA, its officers, directors, agents, employees, affiliates, subsidiaries, parent corporation, and all of their assignees (individually and together "THUSA"), of and from all manner of claims, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, and executions whatsoever, in law or in equity, which [Tim-Minn] **or any Affiliate** ever had, now has, or which any successor or assign of [Tim-Minn] **or any Affiliate** hereafter can, shall, or may have, whether known or unknown, against THUSA for, upon, or by reason of any matter, cause, or thing whatsoever, from the beginning of the world to the date of this Agreement.

---

required by 16 C.F.R. §436.2. There are 23 areas of disclosure required, including, in Item 8, a disclosure of the obligation of a franchisee to purchase certain goods or services for use in the franchise system. *Id.* at §436.5.

[3] Schedule As are invoices to franchisees that include the furniture, equipment, pots, pans—items that are needed to operate the restaurants. (Dep. I 90:3-11).

CASE NO. 20-23481-WILLIAM/TORRES

([DE 109] at ¶122, at Ex. A, § 11; Dep. I Ex. 10 at § 11 (emphasis added)).

The Minnesota District Court construed the Amendment's release under Minnesota law in dismissing with prejudice the MFA claims. The release is likewise valid under Florida law.[4] The construction and enforcement of a release under Florida law is governed by principles of contract law. *Mergens v. Dreyfoos*, No. 95-8793-CIV, 1997 WL 611576, at *4 (S.D. Fla. July 18, 1997). As a general rule, a release will be enforced according to its terms unless it is shown to have been procured by fraud, mistake, coercion, duress, or for an inadequate consideration. *Walker v. Walke*r, 266 So.2d 385, 387 (Fla. Dist. Ct. App. 1972). None of these exceptions is applicable here, as none has been alleged by Plaintiffs.[5]

The execution of a valid release results in the termination of all rights covered by the agreement. *See Pettinelli v. Danzig*, 722 F.2d 706, 708 (11th Cir. 1984) (release "conclusively resolves all claims" covered by release); *Mulhern v. Rogers*, 636 F. Supp. 323, 325 (S.D. Fla. 1986) (same). In determining what rights are covered by a release, courts must look to the intent of the parties as expressed in the document itself. *Solitron Devices, Inc. v. Honeywell, Inc.*, 842 F.2d 274, 277 (11th Cir. 1988); *Weingart v. Allen & O'Hara, Inc.*, 654 F.2d 1096, 1103 (5th Cir. 1981); *Mulhern*, 636 F. Supp. at 325. "The language used in [a] release is the best evidence of the parties' intent." *Hurt v. Leatherby Ins. Co.*, 380 So.2d 432, 433 (Fla. 1980).

---

[4] Minnesota law governs the Franchisee Plaintiffs' statutorily based MFA claim in Count I, while Florida law governs the common-law claims in Counts II – XI, pursuant to the ARDA and Franchise Agreements choice of law provisions, which are not voided by Minnesota's MFA. (*See* [DE 59] at p. 8; Dep. I Ex. 8 at §16.7, Ex. 10 at §12; [DE 85-1] at Ex. A, §17.14); *see also Moxie Venture L.L.C. v. UPS Store, Inc.*, 156 F. Supp. 3d 967, 971 (D. Minn. 2016) (enforcing a California choice of law provision to a franchisee's common-law claims, as opposed to its statutorily based MFA claims).

[5] The Minnesota District Court rejected Tim-Minn's claims asserted in an earlier version of the Complaint that the release was not entered into on a voluntary basis, was the product of duress and was unenforceable. ([DE 59] at p. 11-13).

### a. The Release Bars Tim Minn's Fraud and Negligent Misrepresentation Claims in Counts III and IV

Tim-Minn's fraud and negligent misrepresentation claims allege that THUSA provided false and misleading financial information which induced Tim-Minn to enter the ARDA. (SMF ¶¶17, 18, 24). Tim-Minn's sworn interrogatory answers and deposition testimony make plain that all of the financial information was provided to Tim-Minn in 2015 and 2016, prior to the execution of the December 5, 2017 Amendment that contains the release, and that Durigon/Tim-Minn knew by May 2017 that the financial information was not correct (i.e, that the actual earnings and expenses did not match the estimates provided by THUSA). (SMF ¶¶17, 18, 23-25). These claims are therefore barred by the release which post dates the events in question. *See, e.g., Cerniglia v. Cerniglia*, 679 So. 2d 1160, 1164–65 (Fla. 1996) (court found that general release was enforceable, despite the party's fraud claim based on nondisclosure of financial assets); *Solidda Grp. v. Sharp Elecs. Corp.*, No. 12-21411-CIV, 2014 WL 12513585, at *1 (S.D. Fla. Mar. 3, 2014) (general release barred fraud in the inducement claim, even though release did not use the word "fraud"); *Billington v. Ginn-La Pine Island, Ltd., LLLP*, 192 So. 3d 77, 84 (Fla. Dist. Ct. App. 2016) (release barred fraud claim). THUSA, therefore, is entitled to summary judgment on Tim-Minn's claims in Counts III and IV.

### b. The Release Bars Tim-Minn's Breach of the ARDA Claim in Count VII

Tim-Minn claims in Count VII that THUSA breached the ARDA because it failed to provide training and operational support manuals and a developer manual, failed to provide access to the TimTrac software, failed to assist Tim-Minn with marketing, and that THUSA provided incomplete, misleading, and inconsistent equipment and prices in the Schedule As. ([DE 109] ¶219; SMF ¶¶17, 23, 25-32). Plaintiffs' corporate representative, Durigon, testified that Plaintiffs knew about all of these issues prior to the execution of the December 2017

7

Amendment that contains the release. (SMF ¶¶17, 23, 25-32) Accordingly, the release bars Tim-Minn's breach of the ARDA claim, and THUSA is entitled to summary judgment on Count VII. *See Pettinelli*, 722 F.2d at 708 (release "conclusively resolves all claims" covered by release); *Mulhern*, 636 F. Supp. at 325 (same); *Coral Gables Imported Motorcars, Inc. v. Fiat Motors of N. Am., Inc.*, 673 F.2d 1234, 1239 (11th Cir. 1982) (release contained in second franchise agreement between the parties was sufficient to bar claims based on any oral or written agreements prior to the execution of the second franchise agreement).[6]

### 2.    Additional Reasons Supporting THUSA's Entitlement to Summary Judgment on Tim-Minn's Claims

Even if the release had not extinguished all of Tim-Minn's claims, they would otherwise fail as a matter of law.

### a.    Counts III & IV (Claims of Fraud and Negligent Misrepresentation) Alternatively Fail

Under Florida law, justifiable reliance is an element of fraud and negligent misrepresentation claims. *See, e.g.*, *S.K.Y. Mgm't LLC v. Greenshoe, Ltd.*, No. 06-21722-CIV, 2007 WL 9701121, at *5 (S.D. Fla. Mar. 11, 2007) ("Florida law is clear that reliance is an essential element of a claim for fraud or negligent misrepresentation even when the claim is based on a misrepresentation."); *Schwab v. Swire Realty, Inc.*, No. 06-23013-CIV, 2007 WL 9707023, at *4 (S.D. Fla. Apr. 3, 2007) (same); *Foreline Sec. Corp. v. Scott*, 871 So.2d 906, 910 (Fla. Dist. Ct. App. 2004) (same).

As a matter of law, Tim-Minn cannot establish justifiable reliance on the purported misrepresentations which allegedly induced Tim-Minn's execution of the ARDA, in light of the

---

[6] Tim-Minn also claims in Count VII that THUSA breached the Amendment. Although THUSA does not claim that the purported breach of the Amendment is barred by the release, THUSA is nonetheless entitled to summary judgment on the breach of Amendment claim as discussed *infra* at III(B)(2)(b)(ii).

ARDA's disclaimer provisions. Contrary to its present allegations, Tim-Minn expressly represented in the ARDA that it received no representations from THUSA regarding revenue, profit, or the potential success of the business, and that Tim-Minn was not relying on any such representations:

> …Developer has not received or relied upon, and THUSA expressly disclaims making any representation, warranty or guaranty, express or implied, as to the revenues, profits or success of the TH Development Business.[7]

(Dep. I Ex. 8 at §17(e)). Tim-Minn was represented by counsel during the negotiation and execution of the ARDA, and also retained the internationally renowned Deloitte accounting firm to assist with due diligence prior to entering into the ARDA. (SMF ¶15-16).

Durigon's sworn interrogatory answers and deposition testimony reveal that all of the alleged fraudulent and negligent misrepresentations related to anticipated sales, anticipated costs of food and equipment, anticipated capital expenditures, and anticipated revenues. (*See* SMF ¶¶13, 14, 17, 18, 24). Inasmuch as the ARDA's disclaimer precludes Tim-Minn's reliance on the alleged misrepresentations, there is no issue of fact that THUSA is entitled to summary judgment on the fraud and negligent misrepresentation claims. *See, e.g., Lady of Am. Franchise Corp. v. Malone*, No. 06-61304-CIV, 2006 WL 7354110, at *5, 8-9 (S.D. Fla. Feb. 3, 2006) (dismissing franchisee's negligent misrepresentation claim, because franchisee disclaimed any reliance on franchisor's statements about franchisee success rate and average profits based upon the franchise agreement's disclaimer clause); *Beaver v. Inkmart, LLC*, No. 12-60028, 2012 WL 3822264, at *4-5 (S.D. Fla. Sept. 4, 2012) (dismissing with prejudice franchisee's negligent misrepresentation claim, because franchisee could not have reasonably relied on franchisor's alleged negligent misrepresentations that were contrary to the disclaimer in the franchise

---

[7] The ARDA defines TH Development Business as the business to be conducted by Tim-Minn pursuant to the ARDA under which it will build and operate TIM HORTONS® restaurants. (Dep. I Ex. 8 at §1.76).

agreement).

> **b.      THUSA is Likewise Alternatively Entitled to Summary Judgment on Tim-Minn's Breach of Contract Claim in Count VII**

To establish a breach of contract claim under Florida law, a plaintiff must prove: "(1) a valid contract; (2) a material breach; and (3) damages." *Branch Banking & Tr. Co. v. Appraisalfirst, Inc.*, No. 10-21141-CIV, 2010 WL 11596299, at *5 (S.D. Fla. July 7, 2010) (citations omitted). In Count VII, Tim-Minn claims that THUSA breached several provisions of the ARDA and the Amendment. It is undisputed, however, that these agreements do not give rise to the rights claimed by Tim-Minn, and/or that there is no evidence to support the claims.

> **i.      THUSA Did Not Breach the ARDA**

Tim-Minn alleges that THUSA breached the ARDA by failing to provide Tim-Minn with a Developer Manual. However, Section 7.3 of the ARDA states that "THUSA may in its *sole discretion* publish, and from time to time, modify the Developer Manual." (Dep. I Ex. 8 at §7.3) (emphasis added). Here, there is no evidence that THUSA published a Developer Manual,[8] and Section 7.3 is clear that THUSA was not contractually obligated to provide a Developer Manual. (SMF ¶27). Moreover, Tim-Minn asserts no damages in connection with this claim. (*Id.*).

Tim-Minn also claims that THUSA breached the ARDA because it failed to provide access to TimTrac, which is a platform used for communications between THUSA and Tim-Minn in connection with potential new sites. (SMF ¶26). Again, there is no provision in the ARDA that requires THUSA to provide access to TimTrac. (*See* Dep. I Ex. 8). Even if the ARDA contained such a provision, Durigon testified that Tim-Minn ultimately obtained access

---

[8] Tim-Minn states in its answer to Interrogatory 10: "to the extent that a Developer Manual was created, it was not provided to Tim-Minn." (Dep. I Ex. 15 (Ans. to Int. 10 at p. 5)).

to TimTrac in approximately October 2016, and that Plaintiffs have not quantified any damages stemming from the temporary failure to obtain access. (SMF ¶26).

Tim-Minn alleges that THUSA breached the ARDA by failing to deliver an Operations Manual.[9] Tim-Minn's corporate representative, Durigon, testified that this claim is based upon Section 7.3 of the ARDA. (SMF ¶29). However, Section 7.3 of the ARDA contains no such obligation. (*See* Dep. I Ex. 8 at §7.3). And, in any event, Durigon's testimony makes plain that Plaintiffs received the operational information necessary to operate the restaurants, regardless of what form it was in.[10] (SMF ¶29). Moreover, there has been no attempt to quantify the damages incurred as a result of the alleged failure to provide an operations manual. (*Id.*).

Tim-Minn also claims that THUSA breached its obligation to provide a training manual in violation of ARDA §7.2. (SMF ¶28). However, Section 7.2 does not require a training manual—it only requires Tim-Minn's personnel to attend training prior to soliciting other franchisees. (Dep. I Ex. 8 at §7.2). Even if a training manual was required, Durigon has not attempted to quantify the damages incurred as a result of the alleged failure to provide a training manual. (SMF ¶28).

Tim-Minn alleges that THUSA failed to provide initial training set forth in §§ 7.1 & 7.7 of the ARDA. Durigon acknowledged, however, that THUSA trained the two Tim-Minn employees that Tim-Minn sent to be trained at THUSA's Canada office, and that THUSA also sent representatives to Plaintiffs' stores to train Plaintiffs' employees. (SMF ¶30). Regardless of whether Tim-Minn was satisfied with the initial training, Plaintiffs' employees were able to perform in a manner consistent with THUSA's standards within a couple of weeks of the

---

[9] Durigon testified that the failure to provide operations materials, training materials, and adequate marketing materials occurred prior to December 2017 and predated the Amendment and the release. (Dep. I 113:4-13).

[10] Durigon did not know whether the operational information was available to Plaintiffs online. (Dep. I 117:15-118:10).

opening of each store. (SMF ¶30). And, as with the other breach of contract claims, there has been no attempt to quantify the damages incurred as a result. (*Id.*).

Tim-Minn asserts that THUSA breached the ARDA by failing to provide marketing. (Dep. I Ex. 9 (Ans. to Int. 8)). Durigon testified that Tim-Minn is not claiming that THUSA was obligated to provide marketing documents that it failed to provide. (SMF ¶31). Rather, "it's more the expertise that they were required to provide that they didn't provide." (*Id.*). Notably, there is no provision in the ARDA requiring THUSA to provide marketing expertise (*See* Dep. I Ex. 8), and there has been no attempt to quantify the damages incurred by the alleged failure to provide marketing expertise. (SMF ¶31).

Finally, Tim-Minn claims that THUSA breached Section 7.4 of the ARDA by generally failing to provide guidance in written materials, by electronic media and/or by telephone consultation, by failing to deliver an operations manual or training manual. (SMF ¶32). Plaintiffs' testimony reveals that guidance regarding training and operations was provided by THUSA (SMF ¶¶29-30), but, even if Tim-Minn attempts to dispute that fact, it is undisputed that Tim-Minn has not quantified the damages it allegedly incurred as a result of THUSA's alleged failure to provide these items. (SMF ¶32).

### ii.     THUSA Did Not Breach the Amendment

Tim-Minn further claims in Count VII that THUSA breached the provision of the Amendment that required THUSA to make up to $1.5 million available for marketing. (Dep. I Ex. 10 at §7.9.2). Tim-Minn does not dispute that THUSA made funds available; Tim-Minn's complaint is that it does not know how much money THUSA spent on marketing. (SMF ¶33). Significantly however, Tim-Minn has not quantified the damages allegedly incurred in this regard. (*Id.*). Absent damages, it has no claim.

Plainly, THUSA is entitled to summary judgment against Tim-Minn on Count VII.

c.      **THUSA is Alternatively Entitled to Summary Judgment on Tim-Minn's Breach of the Implied Covenant Claim in Count VIII**

Even in the absence of the release, THUSA is entitled to summary judgment on Count VIII. In Count VIII, Tim-Minn claims that THUSA violated the implied covenant of good faith by filing a lawsuit against some of the Plaintiffs in December 2017 for amounts they owed THUSA. (SMF ¶34; [DE 109] at ¶228-230). After the lawsuit was filed, THUSA was paid, and the lawsuit was dismissed on December 12, 2017. (*Id.*).

Under Florida law, the implied covenant of good faith confers only limited rights, and a "cause of action for breach of the implied covenant cannot be maintained . . . in the absence of breach of an express term of the underlying contract." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316-17 (11th Cir. 1999). Moreover, the covenant must attach to the performance of a specific contractual obligation. ([DE 102] at p. 29; *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005).

There is no contractual provision prohibiting THUSA from suing to recover monies it was owed. (*See* Dep. Ex. 8 & 10; SMF ¶34).[11] Indeed, this Court dismissed this claim in the Third Amended Complaint, with leave to amend to assert the specific provision of the ARDA or the Amendment that was purportedly breached by THUSA. ([DE 102] p. 31).[12] Understandably, Plaintiffs did not comply with the order by citing the purported contractual provisions in the Fourth Amended Complaint, because they do not exist. ([DE 109] ¶¶225-230). And, as Magistrate Torres indicated in his order dismissing this claim in the Third Amended Complaint, the "failure to identify an express contractual provision that has been breached dooms [Tim-Minn's] claim for breach of the implied covenant." (*See* [DE 102] at p. 30-1 citing *Regency Of*

---

[11] Moreover, after the lawsuit was filed, THUSA was paid what it was owed. (*See* Dep. Ex. 8 & 10; SMF ¶34).

[12] The Magistrate's Order was adopted by the Court. ([DE 108]).

*Palm Beach, Inc. v. QBE Ins. Corp.*, No. 08-81442-CIV, 2009 WL 2729954, at *4 (S.D. Fla. Aug. 25, 2009)); *see also Weaver*, 169 F.3d at 1318.

Even if Tim-Minn could somehow identify an applicable contractual provision that THUSA breached by filing the lawsuit, Tim-Minn acknowledged that the lawsuit did not inhibit its ability to develop locations, and Tim-Minn has not quantified any damages incurred as a result of the filing of the lawsuit. (SMF ¶35).  Plainly, THUSA is entitled to summary judgment on Count VIII.

### d.     THUSA is Entitled to Summary Judgment on Plaintiffs' Breach of Contract Claim in Count X

Likewise, even in the absence of a release, THUSA is entitled to summary judgment on Count X. In Count X, Tim-Minn and the Franchisee Plaintiffs claim[13] that THUSA charged incorrect royalties in violation of the Amendment. ([DE 109] ¶¶253-6); SMF ¶36). At deposition, however, Durigon testified that most of the incorrect royalty charges were rectified, and he was not able to testify as to what amounts, if any, were not corrected. (SMF ¶36). THUSA is therefore entitled to summary judgment on this claim.

### C.     THUSA is Entitled to Summary Judgment on the Franchisee Plaintiffs' Claims

The Franchisee Plaintiffs assert the following claims against THUSA: Count I (breach of the MFA); Count II (breach of the implied covenant of good faith and fair dealing); Count V (breach of contract); Count VI (unjust enrichment); Count VII (breach of contract); Count IX (Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Count X (breach of contract) and Count XI (unjust enrichment). The claims in Counts I, II, V and VI are all based on THUSA's alleged promise that it would only charge a reasonable mark-up on goods and

---

[13] This breach of the Amendment claim is asserted on behalf of Tim-Minn and the Franchisee Plaintiffs. As such, THUSA will address the claim with respect to all Plaintiffs here to avoid duplication.

equipment it required its franchisees to purchase, and that THUSA imposed "bogus discounts." ([DE 109] ¶¶164-6; 178-9; 200-2; 206-9). Count VII is based on the Franchisee Plaintiffs' claim that THUSA breached their Franchise Agreements by: failing to provide training and operational support manuals, and access to the TimTrac software. (*Id.* ¶219). The Franchisee Plaintiffs' FDUTPA claim in Count IX is based on the financial information THUSA provided in 2015 and 2016 to Tim-Minn prior to the execution of the original ARDA. (*Id.* ¶239). Counts X & XI are based on the Franchisee Plaintiffs' claim that they were charged incorrect royalties in violation of the Amendment. (*Id.* ¶¶254-6; 260-4).

### 1.    The Release Bars Pre-Release Claims of the Franchisee Plaintiffs

#### a.    The Release Binds the Franchisee Plaintiffs

Although the Franchisee Plaintiffs did not sign the Amendment, the release contained therein is binding on them. The release provides in part:

> Developer [*i.e.*, Plaintiff], for itself **and on behalf of itself for each Affiliate**, hereby remises, releases, acquits, satisfies, and forever discharges THUSA, … of and from all manner of claims, ... **which Developer or any Affiliate** ever had, now has, **or which any successor or assign of Developer or any Affiliate** hereafter can, shall, or may have, whether known or unknown, against THUSA for, upon, or by reason of any matter, cause, or thing whatsoever, from the beginning of the world to the date of this Agreement.

(Durigon Dep. I Ex. 10 at § 11) (emphasis added).

The ARDA defines "Affiliate" as a person that directly or indirectly controls, is controlled by, or is under common control with another person. (Dep. I Ex. 8 at § 1.4). The ARDA also provides that Developer Subsidiaries are Affiliates of Developer, and defines "Developer Subsidiaries" as the wholly owned, direct subsidiaries of Tim-Minn which it may, at its option, form for the sole purpose of owning and operating TIM HORTONS® restaurants. (Dep. I Ex. 8 at §1.4, 1.20).

Here, Durigon's deposition testimony establishes that the Franchisee Plaintiffs are Tim-

Minn's "Affiliates" because they are all under the common control of Durigon. (SMF ¶¶4-8 & 10). Durigon testified that he had ultimate and direct control of all of the Plaintiffs, that he was the ultimate decision maker for all of the Plaintiffs and that he had ultimate responsibility for all of the Plaintiffs. (SMF ¶10). Accordingly, under ARDA §1.4, the Franchisee Plaintiffs are Tim-Minn's Affiliates.

Alternatively, the ARDA states that "Developer Subsidiaries" are Affiliates of Developer. (Dep. I Ex. 8 at §§1.4, 1.20). Developer Subsidiaries are defined as the wholly owned, direct subsidiaries of Tim-Minn which it may, at its option, form for the sole purpose of owning and operating TIM HORTONS® restaurants. (*Id*.). As made clear by the Franchisee Plaintiffs' interrogatory response and Durigon's deposition testimony, the Franchisee Plaintiffs were all formed for the sole purpose of owning and operating the restaurants that Tim-Minn established under the ARDA. (SMF ¶5; Dep. I 258:8-24). Tim-Minn is the parent company of and owns 100% of Tim-Minn Operations, and Tim-Minn Operations is the parent company of and owns 100% of all of the Franchisee Plaintiffs. (SMF ¶¶7-8). Durigon had ultimate and direct control of all of these entities, he was the ultimate decision maker for all of these entities, and he had ultimate responsibility for all of these entities. (SMF ¶10).

Based on the foregoing, the Franchisee Plaintiffs constitute Tim-Minn's "Affiliates" and the release bars their pre-release claims. *See, e.g. Tyman v. Ford Motor Company*, 521 F. Supp. 3d 1222 (S.D. Fla. Feb. 23, 2021) (company qualified as an affiliate where it was an indirect, wholly-owned subsidiary of defendant); *Black's Law Dictionary* (11th ed. 2019) (defining affiliate as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation.").

b. **THUSA is Entitled to Summary Judgment on the Franchisee Plaintiffs' Pre-Release Claims**

The Franchisee Plaintiffs' claims in Counts I (MFA violation), Count II (breach of implied covenant of good faith and fair dealing), Count V (breach of contract), Count VI (unjust enrichment), and Count IX (violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")) all arose prior to and pre-date the release.

The claims in Counts I, II, V and VI are all based on THUSA's alleged promise in Item 8 of the FDD that it would only charge a reasonable mark-up[14] on goods and equipment it required its franchisees to purchase. ([DE 109] ¶¶164-6; 178; 202; 206-8).[15] With respect to the unreasonable mark-up claims, the Franchisee Plaintiffs allege that THUSA represented in Item 8 of the FDD that it would charge a "reasonable" markup on items and goods sold to them, and that THUSA's representation was untrue. (*Id.*; SMF ¶¶37, 38).

Durigon's deposition testimony makes clear that the unreasonable mark-up claims arose prior to the release, and that the Franchisee Plaintiffs knew about the facts surrounding these claims prior to the execution of the Amendment that contains the release. (SMF ¶¶37-38).

The Franchisee Plaintiffs' FDUTPA claim in Count IX likewise predates the release. This claim is based on financial information THUSA provided in 2015 and 2016 prior to the execution of the original ARDA, and obviously prior to the execution of the Amendment. ([DE 109] at ¶239 (which references ¶¶44, 50, 64, 75)). Durigon repeatedly testified that he knew by May 2017 that the information provided in 2015 and 2016 was purportedly inaccurate and misleading. (SMF ¶¶17-18).

---

[14] The fact that Item 8 does not contain this language (and instead provides that THUSA is permitted to charge *what THUSA considers to be* a reasonable mark-up) is addressed in Section (III)(C)(2)(a) below.

[15] Counts II and VI are also based on Franchisee Plaintiffs' "bogus discount" claim that they received credits from THUSA, but they do not know the reason for them. (SMF ¶39). The "bogus discount" claims are addressed in Section (III)(C)(2)(b).

Inasmuch as Counts I (MFA violation), Count II (breach of implied covenant of good faith and fair dealing), Count V (breach of contract), Count VI (unjust enrichment) and Count IX (FDUTPA) are barred by the release, THUSA is entitled to summary judgment on these claims.

### 2. Even were the Release Inapplicable, THUSA Would be Entitled to Summary Judgment against the Franchisee Plaintiffs

#### a. THUSA is Entitled to Summary Judgment on the MFA Claim (Count I)

In this count, the Franchisee Plaintiffs bring the same claim originally asserted by Tim-Minn in Minnesota and allege that THUSA represented, in Item 8 of the FDD, that it would only charge a reasonable markup on items and goods sold to them, and that THUSA's representation was an "untrue—or at minimum exceptionally misleading—statement of material fact" in violation of the MFA, Section 80C.13, Subdivision 2. ([DE 109] at ¶¶164-168). The applicable section of the MFA provides, "No person may offer or sell a franchise in this state by means of any written or oral communication which includes an untrue statement of a material fact or which omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." Minn. Stat. §80C.13, Subd. 2.

The Franchisee Plaintiffs' MFA claim fails for multiple reasons. First, despite their claim, the Franchisee Plaintiffs do not know whether the markups were reasonable or unreasonable. (SMF ¶¶37-38). Thus, there is no evidence to support the claim. Additionally they have not quantified the damages they believe they incurred as a result of the unknown unreasonable mark-ups, and the claim independently fails on that basis. (*Id.*).

Second, the Franchisee Plaintiffs mischaracterize Item 8 of THUSA's FDD,[16] in an effort

---

[16] Plaintiffs acknowledge that Item 8 in the FDD was the same in the 2015, 2016, 2017 and 2018 FDD's. ([DE 109] at ¶131, n.6).

to support their factually deficient claim. As they admit in the Fourth Amended Complaint, Item 8 states:

> We and our affiliates may charge **what we consider to be** a reasonable mark-up on items sold to you.

([DE 109] at ¶ 131 & n.6) (emphasis added). Under the plain language of the FDD, THUSA is permitted to charge *what THUSA considers to be* a reasonable mark-up on items sold, not what the Franchisee Plaintiffs or a third party may consider to be a reasonable mark-up.

Several judges in the Southern District of Florida have held that where, as here, the franchisor retains sole discretion to determine the way in which it will provide certain services, the franchisee's claim for failing to provide those services was barred. *See, e.g., Burger King Corp. v. Berry*, No. 1:20-cv-21801-UU, slip. op. pp. 11-12 (S.D. Fla. Sept. 4, 2020), ECF. No. 37 (where Burger King Corporation could, in its sole business judgment, allocate advertising contributions, no affirmative obligation of the contract was breached; claim dismissed); *Burger King Corporation v. E-Z Eating 8th Corp.*, No. 07-20181-CIV-COOKE/BROWN, 2008 WL 11330723 (S.D. Fla. May 22, 2008) (franchise agreement did not contain an obligation to provide ongoing support, and contract claim was therefore barred); *Burger King Corp. v. Hinton*, 203 F. Supp. 2d 1357, 1362 (S.D. Fla. 2002) (as a matter of law, the fact that BKC maintained sole reasonable discretion to determine the way in which it provides services in franchise agreement barred franchisee's claim for breach of contract for failure to provide general services); *Burger King Corp. v. Austin,* [1990–1992 Transfer Guide] Bus. Franchise Guide (CCH) ¶ 9731 at 21, 774 (S.D. Fla. Nov. 5, 1990) (dismissing breach of contract claim based on allegations concerning management changes where franchise agreement did not explicitly or implicitly permit franchisee to be involved in management affairs); *see also America's Favorite Chicken Co. v. Cajun Enter., Inc.*, 130 F.3d 180, 182 (5th Cir. 1997) (affirming dismissal of

breach of contract claim where franchise agreement vested complete discretion in company to provide assistance in operation of franchises).

Given the dearth of evidence—and THUSA's broad contractual discretion—Count I fails as a matter of law.

> **b.  Summary Judgment Should Be Entered Against the Franchisee Plaintiffs on their Breach of Implied Covenant of Good Faith Claim in Count II**

In Count II, the Franchisee Plaintiffs allege that THUSA breached the implied covenant of good faith by "materially mislead[ing] the Franchisee Plaintiffs with promises of 'reasonable' markups on necessary purchases," by providing "bogus 'discounts,'" and by providing "incomplete, misleading, and . . . inconsistent information" in the Schedule As. ([DE 109] at ¶178-181). The Franchisee Plaintiffs' "bogus discount" claims are based on credits received by the Franchisee Plaintiffs, but they do not know the reason for the discounts. (SMF ¶39).

Even if there was evidence to support the factual basis for these claims (which, as set forth in Sections (III)(C)(2)(a) and (III)(C)(1)(b), there is not), the implied covenant of good faith attaches only to the performance of a specific contractual obligation. ([DE 102] p. 29); *see also Centurion Air Cargo,* 420 F.3d at 1151. Here, there is no contractual provision promising reasonable mark-ups or addressing bogus discounts or the Schedule As. And, despite the Magistrate's dismissal of this claim in the Third Amended Complaint with leave to amend to assert the specific provision of the franchise agreement that was purportedly breached ([DE 102] p. 29-30), no contractual provisions were identified by the Franchisee Plaintiffs in the Fourth Amended Complaint, which dooms this claim. (*See* [DE 109] at ¶¶172-183); (*see* [DE 102] at p. 30-1 citing *Regency of Palm Beach,* 2009 WL 2729954, at *4); *see also Weaver*, 169 F.3d at 1318.

Moreover, even if there was a specific provision in the Franchise Agreements that was breached by THUSA, the Franchisee Plaintiffs have not quantified any damages they incurred as a result of these claims. (SMF ¶¶25-32, 37-39). THUSA is therefore entitled to summary judgment on Count II.

### c.   THUSA is Entitled to Summary Judgment on the Franchisee Plaintiffs' Breach of Contract Claim in Count V

Count V is another claim based on THUSA's alleged misrepresentation in Item 8 of the FDD that it would only charge reasonable markups on goods that it required franchisees to purchase. Here, the Franchisee Plaintiffs claim that THUSA breached their Franchise Agreements by charging unreasonable markups. ([DE 109] at ¶¶199-203). Not only is there no provision in the Franchise Agreements requiring THUSA to only charge reasonable markups, but, as set forth in Section (III)(C)(2)(a) above, there is no evidence to support this claim. THUSA is therefore entitled to summary judgment on Count V.

### d.   The Franchisee Plaintiffs' Unjust Enrichment Claims in Counts VI Fails

In Count VI, the Franchisee Plaintiffs claim that THUSA was unjustly enriched as a result of unreasonable markups and bogus discounts. ([DE 09] ¶¶206-209). Again, there is no evidence of unreasonable mark-ups. (*See* Section (III)(C)(2)(a)).

Moreover, Florida law is clear that where there is an express contract between the parties, claims arising out of that contractual relationship do not support a claim for unjust enrichment. *Weaver v. Mateer & Harbert, P.A.*, 523 Fed. App'x. 565, 569 (11th Cir. 2013) ("because there was no dispute that the parties entered into an express written contract, [plaintiff's] claim against [defendant] for unjust enrichment was unavailing as a matter of law") (applying Florida law); *Mario v. Centex Homes*, No. 8:06-CV-131-T-23, 2006 WL 560150, at *1 (M.D. Fla. Mar. 7,

CASE NO. 20-23481-WILLIAM/TORRES

2006) ("[t]he existence of a contract precludes an action for unjust enrichment."); *see also Bowe v. Public Storage*, 106 F. Supp. 3d 1252, 1274 (S.D. Fla. 2015) (same).

Here, none of the parties disputes that the Franchise Agreements are valid and binding agreements. This, therefore, bars the unjust enrichment claim, and THUSA is entitled to summary judgment on Count VI. *See Pierce,* 2014 WL 7671718, at *5 (dismissing unjust enrichment claim because none of the parties asserted that the contract was invalid); *Marino*, 2006 WL 8435469, at *2 (quantum meruit/unjust enrichment claim can only be pled in the alternative if one or more of the parties contests the existence of an express contract governing the subject of the dispute; claim dismissed).

### e. THUSA is Entitled to Summary Judgment on the Franchisee Plaintiffs' Breach of Contract Claim in Count VII

In Count VII, the Franchisee Plaintiffs allege that THUSA was required to provide training and operational support and manuals, access to Tim Trac, and ensure that the Franchisee Plaintiffs had what they needed to meet their obligations. ([DE 109] at ¶219). As set forth above, the contractual provisions do not support these claims, the Franchisee Plaintiffs have not quantified any damages they incurred as a result of these claims, and they are barred by the release. (*See* Section (III)(C)(1)); SMF ¶¶25-32).

Inasmuch as there is no genuine issue of fact that there has been no material breach of the Franchise Agreements, and there is no evidence of the damages purportedly sustained as a result of any breach, THUSA is entitled to summary judgment against the Franchisee Plaintiffs on Count VII. *See Branch Banking,* 2010 WL 11596299, at *5 (breach of contract claim requires a valid contract, a material breach and damages).

### f. THUSA is Entitled to Summary Judgment on the Franchisee Plaintiffs' FDUTPA Claim in Count IX

Although the FDUTPA claim is asserted solely by the Franchisee Plaintiffs, it is based

22

entirely on the financial information THUSA provided to Tim-Minn in 2015 and 2016 (even though Tim-Minn is not a party to this claim), prior to the execution of the ARDA. ([DE 109] ¶239-245). These are the same financial representations upon which Tim-Minn's fraud and misrepresentation claims in Counts III and IV are based. (*See* [DE 109] ¶185-197).

A party asserting a FDUTPA claim must prove: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Jones Superyacht Miami, Inc. v. M/Y Waku*, No. 19-20735-CIV, 2020 WL 1666724, at *5 (S.D. Fla. Apr. 3, 2020); *Heckman v. SBE ENT Holdings, LLC*, No. 18-22258-CIV, 2019 WL 1468555, at *4 (S.D. Fla. Feb. 25, 2019); *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013). "A deceptive act or practice is 'one that is likely to mislead consumers and unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Heckman*, 2019 WL 1468555 at *4; *PNR, Inc. v. Beacon Property Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003) (citations omitted); *State Farm Mut. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1300 (S.D. Fla. 2018) (citation omitted); *Willard v. Home Depot, U.S.A., Inc.*, No. 09-110, 2009 WL 1884395, at *2 (N.D. Fla. June 29, 2009). A deception occurs only if there is a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Willard,* 2009 WL 1884395, at *2; *see also Hogan,* 2018 WL 8266803, at *11 ("A deceptive practice is one that is "likely to mislead" consumers.").

First, the alleged representations were made to Tim-Minn, relied on by Tim-Minn, and caused Tim-Minn to execute the ARDA. ([DE 109] ¶¶239, 243-245). Here, the Franchisee Plaintiffs did not receive the financial information upon which this claim is based, nor did they rely on the financial information. (*See* [DE 109] ¶¶239, 240, 243-45). Additionally, the claim is barred by the release, as discussed in Section (III)(C)(1).

Nor is there a basis for the Franchisee Plaintiffs' entitlement to damages or a connection between those damages and the alleged deceptive act or unfair practice. *Hakim-Daccach v. Knauf Int'l GmbH*, No. CV 17-20495-CIV, 2017 WL 5634629, at \*7 (S.D. Fla. Nov. 22, 2017) (even if plaintiff successfully pleaded a deceptive act or unfair practice, the claim still fails because he has not properly alleged the basis for his entitlement to damages.); *see also* ([DE 102] at p. 45).

Accordingly, THUSA is entitled to summary judgment. *See, e.g., Hogan,* 2018 WL 8266803, at \*11 (plaintiff's FDUTPA claim dismissed because allegations were "nowhere near enough to create a plausible inference of unfair or deceptive acts"); *Hakim-Daccach,* 2017 WL 5634629, at \*7 (FDUTPA claim failed because a proper basis for the entitlement to damages and a connection between the damages and the deceptive act or practice was not alleged).

### g.  THUSA is Entitled to Summary Judgment on the Franchisee Plaintiffs' Unjust Enrichment Claim in Count XI

In Count XI, the Franchisee Plaintiffs seek unjust enrichment and claim that they were charged incorrect royalties in violation of the Amendment.[17] ([DE 109] ¶¶260-264); (SMF ¶36). However, as noted above in Section (III)(B)(2)(d), there is no evidence of incorrectly charged royalties.

Moreover, none of the parties disputes that the Amendment is a valid and binding agreement, which bars the unjust enrichment claim. (SMF ¶19); *see Pierce v. State Farm Mut. Auto. Ins. Co.*, No. 14-22691-CIV-KMW, 2014 WL 7671718, at \*5 (S.D. Fla. Dec. 17, 2014) (upon showing that an express contract exists, the unjust enrichment claim will fail); *Marino v.*

---

[17] THUSA's motion with respect to the Franchisee Plaintiffs' claim in Count X is addressed in Section (III)(B)(2)(d) above. Counts X and XI are both based on the claim that THUSA charged royalties in an amount that violated the terms of the Amendment. ([DE 109] ¶¶251-256 & ¶¶259-263).

*Home Depot U.S.A., Inc.*, No. 06-80343-CIV, 2006 WL 8435469, at *2 (S.D. Fla. Sept. 8, 2006).

Accordingly, THUSA is entitled to summary judgment on Count XI.

> **D.      Plaintiffs' Claims Fail Because They Seek to Recover Damages Allegedly Incurred by Non-Parties or Because the Alleged Damages Were not Proximately Caused by any THUSA Wrongdoing**

Even if Plaintiffs could somehow establish liability, their claims fail as a matter of law because the alleged damages were incurred by non-parties or because the damages they claim were not proximately caused by any wrongdoing by THUSA. Plaintiffs' interrogatory answers state that Plaintiffs' claim more than $32 million damages. (Dep. I Ex. 15 (Ans. to Int. 11)). The great majority are damages incurred by Plaintiffs' owners, as opposed to any Plaintiff to this lawsuit.  Plaintiffs seek to recover $16 million allegedly invested by Durigon and his partners in a company known as RDP which, in turn, allegedly invested $16 million in Tim-Minn. (SMF ¶43).  Additionally, Plaintiffs seek $12.8 million which Durigon testified he would have made on other investments had he not invested money in RDP. (SMF ¶44). However, none of Durigon, RDP, or any Durigon partner is a plaintiff in this case and these alleged damages are not recoverable by the Plaintiffs here. *See Amoco Oil Co. v. Gomez*, 379 F.3d 1266, 1278 (11th Cir. 2004) (where testimony revealed that damages spent "running the business" were spent by corporation and not plaintiff, plaintiff lacked standing to seek those damages); *24/7 Recs., Inc. v. Sony Music Ent., Inc.*, 566 F. Supp. 2d 305, 319 (S.D.N.Y. 2008) (reliance damages concern money spent by the plaintiff in preparation for or partial performance of the agreement, not investments made by third parties).

Plaintiffs also claim damages of $1.1 million representing debts allegedly owed to Sysco, a distributor of food products. But, none of these damages are tied to any wrongdoing by THUSA.  (SMF ¶45). And, Plaintiffs have not broken down the amounts each owes to Sysco. (*Id.*).

CASE NO. 20-23481-WILLIAM/TORRES

The balance of the damages sought are for attorneys' fees, which would only be recoverable upon proof that Plaintiffs are the prevailing parties. (Dep. I Ex. 8 at §16.15; [DE 85-1] Ex. A at §17.18). However, none of Plaintiffs' claims establish misconduct that THUSA misconduct was the proximate cause of their inability to pay rent. (*See* SMF ¶¶42-49).

## IV.    CONCLUSION

Based on the foregoing, there are no genuine issues of material fact and Defendant Tim Hortons USA Inc. is entitled to summary final judgment with respect to Plaintiffs' claims in the Fourth Amended Complaint as a matter of law. Additionally, this Court should reserve jurisdiction to award THUSA its reasonable attorneys' fees and costs pursuant to the terms of the ARDA, Amendment and the Franchise Agreements, together with such other relief as the Court deems proper.

**GENOVESE JOBLOVE & BATTISTA, P.A**.
*Counsel for Tim Hortons USA, Inc.*
4400 Miami Tower
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 349-2300

**s./ Jessica Serell Erenbaum**

Michael D. Joblove, Florida Bar No.: 354147
mjoblove@gjb-law.com
Jessica Serell Erenbaum, Florida Bar No. 816000
jerenbaum@gjb-law.com

26

CASE NO. 20-23481-WILLIAM/TORRES

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on January 31, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

s./ Jessica Serell Erenbaum

Attorney

27

CASE NO. 20-23481-WILLIAM/TORRES

**<u>SERVICE LIST</u>**

***Tim-Minn, Inc. v. Tim Hortons USA, Inc.***
**CASE NO. 20-cv-23481-KMW**

Michael D. Joblove, Esq.
mjoblove@gjb-law.com
Jessica Serell Erenbaum
jerenbaum@gjb-law.com
GENOVESE JOBLOVE & BATTISTA, P.A.
4400 Miami Tower
100 Southeast Second Street
Miami, Florida 33131
Telephone:     (305) 349-2300
Facsimile:     (305) 349-2310
*Attorneys for Defendant Tim Hortons USA, Inc.*


Gerald A. Marks - *Pro Hac Vice*
jerry@marksklein.com
Steven T. Keppler - *Pro Hac Vice*
steven@marksklein.com
MARKS & KLEIN, LLP
63 Riverside Avenue
Red Bank, New Jersey 07701
Telephone:     (732) 747-7100
Facsimile:     (732) 219-0625
*Attorneys for Plaintiff Tim-Minn, Inc.*
***SERVED VIA CM/ECF***


Adam G. Wasch, Esq.
awasch@waschraines.com
Natalie M. Restivo, Esq.
nrestivo@waschraines.com
WASCH RAINES, LLP
2500 North Military Trail, Suite 100
Boca Raton, FL 33431
Telephone: (561) 693-3221
Facsimile: (561) 404-1104
*Attorneys for Plaintiffs*
***SERVED VIA CM/ECF***

28