IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

TIM-MINN, INC., et al.,

    Plaintiffs,

v.

TIM HORTONS USA INC.,

    Defendant.

Civil No.: 1:20-cv-23481-KMW

## DECLARATION OF STEVEN T. KEPPLER, ESQ. IN SUPPORT OF THE MOTION TO ALLOW TIME FOR ADDITIONAL DISCOVERY PER FED. R. CIV. P. 56(d)

I, Steven T. Keppler, Esq., hereby declare as follows:

1. I am an attorney of the State of New Jersey and licensed to practice law before the Federal and State courts of New Jersey. I am appearing in this matter *pro hac vice* on behalf of the Plaintiffs in this dispute as an Associate of the law firm, Marks & Klein, LLP.

2. I have personal knowledge of the matters stated herein and provide this declaration based upon same.

3. This motion is necessary to not only protect the Plaintiffs' interests from a procedural perspective, but also to ensure that this Court has a full record against which it may determine whether Defendants' motion for summary judgment (ECF No. 133) succeeds or fails.

4. Defendant, through gamesmanship and a determined failure to respond meaningfully in discovery, has railroaded Plaintiffs by filing a premature motion for summary judgment. More, Defendant's gamesmanship includes the creation of unreasonable and unnecessary obstacles to obtaining same during the discovery window and thereafter.

5. While discovery may be closed, it was and is by no means complete. Plaintiffs have previously made record with this Court the difficulty in seeking fact discovery where (as was

the case here) Defendant had not filed an answer and there was genuine concern that Defendant might file counterclaims once the pleadings were closed.

6. Defendant did not seek discovery until the pleadings were closed, issuing its initial discovery demands on September 15, 2021. Thereafter, Plaintiffs in good faith requested a meet and confer to discuss the extension of discovery. Even if Plaintiff had propounded discovery prior to this time, it is exceedingly unlikely Defendant would have provided its answers to discovery until after their answer was filed, claiming such requests were premature. Further, Plaintiff's discovery requests would have been exceedingly incomplete at any prior time, because without knowing Defendant's specific denials, and/or affirmative defenses, no questions could be properly posed regarding same.

7. After the meet and confer, on September 29, 2022, Defendant's counsel refused to consent to the extension of discovery. A true and correct copy of this email correspondence is annexed hereto as Exhibit A.

8. Pursuant to *Fed. R. Civ. P.* 12, Defendant had 21 days to file its Answer (or otherwise move the Court), beginning October 15, 2021. Defendant filed its Answer and Affirmative defenses on October 28, 2021, and again on November 1, 2021. This was calculated to deny Plaintiffs meaningful discovery.

9. On October 29, 2021, Plaintiff issued Interrogatories and Requests for Production. True and correct copies of Plaintiffs' Interrogatories and Requests for Production are annexed hereto as Exhibits B and C, respectively.

10. Plaintiffs issued their initial responses to Defendant's discovery demands on October 18, 2021, and supplemented those responses on November 8, 2021, November 18, 2021, and again on December 13, 2021.

11. Strikingly, Defendant has known Plaintiff's claims (in whole or in part) for *years* and has had that time to prepare its defense. Conversely, Plaintiff has had limited insight into Defendant's case strategy and as noted above, whether Defendant would assert counterclaims.

12. At approximately 4:00 PM on November 29, 2021, Defendant provided *pro forma* objections to the Plaintiff's discovery demands.

13. With respect to Interrogatories, Defendants provided no responses whatsoever, claiming that Plaintiffs' interrogatories exceeded the permissible number of discrete interrogatories. Defendant relies upon a partial citation to an unreported opinion which it did not provide to Plaintiffs (*Trebor Indus., Inc. v. JL Gory, LLC* 2010 WL 11549691). Plaintiffs reasonably believe it is an Order issued December 30, 2010 by the Hon. Lurana S. Snow, U.S. Maj. in the matter of *Trebor Indus., Inc. v. JL Gory, LLC*, 0:09-cv-60214-WPD (ECF No. 108). A true and correct copy of this Order (without exhibit) is annexed hereto as Exhibit D. True and correct copy of Defendant's Objections to Interrogatories is annexed hereto as Exhibit E.

14. With respect to the responses to Plaintiffs' Request for Production, Defendant provided no documents in response to 12 out of 14 requests. A true and correct copy of this document is annexed hereto as Exhibit F.

15. On November 30, 2021, Plaintiffs issued a discovery deficiency notice via electronic mail demanding immediate responses to discovery. A true and correct copy of this correspondence is annexed hereto as Exhibit G.

16. In the deficiency notice supplied to Defendant, Plaintiffs placed THUSA on notice that its objections to answering interrogatories were improper, non-responsive, and contrary to law. *See* Ex. G.

17. More specifically, and to the extent Defendant argued it could not answer *any* discovery requests in reliance upon *Trebor*, Plaintiffs noted that the allegedly objectionable requests spoke almost entirely to related types of information. That is to say, Plaintiffs requested specific factual information corresponding to a number of THUSA's denials of the facts alleged in the Complaint, lumping like questions of fact together.

18. As noted in the Deficiency notice, for example, that:

> "…Interrogatory 13 speaks to several paragraphs of the Fourth Amended Compliant (91-97) which address the final stages of Plaintiffs' ability to continue as area developers due to, it is alleged, THUSA's interference with their business operations and inability to maintain and support Plaintiffs' development schedules. Again, these are deeply interconnected events and allegations which THUSA should have provided responses for. Likewise, Interrogatory No. 14 addresses a series of allegations, which THUSA denied, which are also interrelated and speak to THUSA's lack of support to Plaintiffs on basic operations issues. Again, THUSA's response to this Interrogatory does not require discrete, disconnected responses and your representation otherwise is pure gamesmanship. In short, and unlike the situation presented in *Trebor*, the complained-of Interrogatories do not "lump together" numerous, disparate issues which "clearly cover a number of different topics," and therefore do not compel the conclusion that they are separate interrogatories.

19. Even if the Defendants were correct in their claims (which they are not), *Trebor* speaks to a circumstance where there were an astounding 232 discrete interrogatories, and under the circumstances it was inappropriate to refuse to answer *any* interrogatories. *See* Ex. D.

20. Defendant did not produce <u>any</u> documents with its discovery responses, though it indicated in its responses to Plaintiffs' Request for Production that it would provide <u>some</u> documents. *See* Ex. F.

21. Indeed, Defendant claimed it would provide discovery responses to Requests 9 and 12 "at a mutually convenient time, place and manner," only. However, THUSA did not produce such documents until December 8, 2021, and only after Plaintiffs demanded same.

22. On that date, Defendant produced a single PDF file, 5944 pages long, which purported to contain documents responsive to Requests 9 and 12. A true and correct copy of this email service is annexed hereto as Exhibit H.

23. Upon review of same, Plaintiffs demanded, on December 10, 2021, that Defendant reproduce the documents as individual documents so they could be reviewed properly and efficiently. *See* Ex. H.

24. Defendant's ~6,000 page PDF could not be opened or navigated, there was no indication where one document started and the next stopped, and it was abundantly clear that Defendant produced its discovery in this manner to disadvantage the Plaintiffs. *Id*.

25. On December 13, 2021, Defendant finally produced 23, discrete documents. *See* Ex. H.

26. Otherwise, the Defendants have not meaningfully responded to the Deficiency Notice.

27. In addition to the foregoing, Defendant has sought, and obtained, a discovery order from Magistrate Torres at a hearing on December 2, 2021. With regard to that hearing, Plaintiffs understood it was originally to be scheduled on October 28, 2021, but Defendant was unable to secure that date, and so the dispute was not heard until December 2, 2021. Plaintiff addressed at that hearing its consternation with Defendant's refusal to produce discovery, at which time the Magistrate indicated that he understood the concern, but advised this motion was necessary as he lacked authority to amend the scheduling order.

28. Plaintiffs thereafter moved this Court to amend the scheduling order (ECF No. 126), but the Court denied same without briefing. (ECF No. 127)

29. Subsequently, and subject to the Court's scheduling order, Plaintiff moved for summary judgment on January 31, 2022 despite knowing that it had not produced the bulk of requested discovery. Defendant relied upon the Plaintiffs' manufactured ignorance in filing same.

30. In particular, Defendants withheld documents responsive to Document Requests 6, 7, 11, 13, and 14. *See* Ex. F.

31. Document Request No. 6 sought: "[a]ny and all documents which reflect, relate to, or otherwise indicate prices paid for necessary items sold to any of the Franchisee Plaintiffs by you or any of your affiliates and/or subsidiaries, including but not limited to the TDL Group between 2016 and 2018."

32. Document Request No. 7 sought: "[a]ny and all documents reflecting prices charged to the Franchisee Plaintiffs by you or any of your affiliates and/or subsidiaries, including but not limited to the TDL Group between 2016 and 2018."

33. Document Request No. 11 sought: "[a]ny and all emails or other correspondence between you and any third party relating to materials, furniture, fixtures, equipment, goods, and other products sold through you to any Plaintiff hereto."

34. Document Request No. 13 sought: "[b]ills, invoices, bills of lading, receipts, payment stubs, and any other indicia of payment made for materials, furniture, fixtures, equipment, goods, and other products sold through you to any Plaintiff hereto."

35. Document Request No. 14 sought: "[b]ills, invoices, bills of lading, receipts, payment stubs, and any other indicia of payment received for materials, furniture, fixtures, equipment, goods, and other products sold through you to any Plaintiff hereto."

36. Defendant produced <u>no</u> documents responsive to these requests. Defendant did not seek a protective order preventing disclosure of these documents.

37. The aforementioned information and documentation are important and necessary discovery which Defendant failed to produce because the information contained therein goes to the heart of several of Plaintiffs' claims and Plaintiff reasonably believes that, if such information were produced in discovery, the outcome of the summary judgment would likely be materially and significantly impacted.

38. For example, Plaintiffs Fourth Amended Complaint, Counts I and IV, were substantially impacted by Defendants' refusal to produce discovery of <u>any</u> kind as set forth above.

39. Defendant knew it was the sole source of this information, insofar as Plaintiffs have no knowledge as to where THUSA purchases items it required them to repurchase at so-called "reasonable" upcharge, for example. Only THUSA knows the prices it paid for these items, and only THUSA has documents reflecting how much it sold those items to the Plaintiffs for.

40. Indeed, THUSA's argument has always been – "we get to decide what is reasonable" and the obvious corollary here is "reasonable is whatever THUSA says it is." In short, THUSA stacked the deck against the Plaintiffs, gamed the discovery calendar, and then filed a premature motion for summary judgment.

41. Similarly, Plaintiffs claims of fraud and negligent misrepresentation, and the claim under the Florida Deceptive and Unfair Trade Practices Act, rely in no small part upon understanding the source of the information provided by Stephen Goldstein to Paul Durigon in August 2015. Defendants have steadfastly refused to explain the source of that information and how it came to be presented to the Plaintiffs at that time. Plaintiffs have a right to know this information.

42. This sort of practice ought to be anathema to this Court and the orderly administration of justice in the United States District Courts in general. It deprives Plaintiffs of due process and should not be tolerated.

43. This Court should act to promote fundamental concepts of fairness to <u>all</u> litigants and ensure there is sufficient time to receive and review the missing discovery and supplement the summary judgment briefing accordingly before passing judgment on the motion. Or, in the alternative, deny the motion outright, without prejudice, and permit the parties to complete fact discovery.

44. It is manifestly unfair to permit Defendant to literally wait out the entire discovery calendar to file an Answer at the eleventh hour and then, when discovery is promptly served upon it, permit Defendant to refuse to respond to discovery.

45. Plaintiffs reasonably believe that no undue prejudice will inure to this Court or to the Defendant by providing the requested relief and, to the extent prejudice exists, it does not outweigh Plaintiffs' right to obtain discovery where, as here, Defendant has filed a premature motion for summary judgment.

I certify the foregoing statements are true to the best of my knowledge and belief and if any of these statements are found to be willfully false, I am subject to punishment.

Respectfully submitted by:

**MARKS & KLEIN, LLP**

<u>/s/ *Steven Keppler*</u>
331 Newman Springs Road
Building 1, 4th Fl., Suite 143
Red Bank, NJ 07701
steven@marksklein.com